### GALLAGHER & MASON *vs.* H. & H. P. WARING.

In a sale of merchandise by *sample*, the law implies a *warranty* that the bulk of the commodity is of the same quality with the specimens exhibited; and the fact of the purchaser requiring the agent of the vendor to test the correctness of the sample exhibited, by procuring a second sample, does not change the character of the sale; it is still a sale by sample.

Where the commodity is *cotton* in *bales*, lying in the store house of the vendor, situate in the place where both vendor and vendee reside, and the purchase is made without an examination or opportunity for examination, the cotton being in *bales*, IT SEEMS, that a *warranty* that the article is *merchantable* will be implied, although no *sample* was exhibited at the sale, and notwithstanding that the *vendor* had no better opportunity than the *vendee* for the inspection of the article; but a warranty that the article is of a particular quality or fineness will not be implied.

THIS was an action of assumpsit, tried at the New-York circuit in March, 1830, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The plaintiffs claimed to recover damages for a breach of warranty in the sale to them by the defendants of 50 bales of cotton, alleging the sale to have been made by *sample*, and that the bulk of the commodity, when opened in a foreign market, proved to be of a quality inferior to the samples exhibited.　　The declaration in the first count charged a *sale by sample ;* and in the second a *warranty* was alleged that the cotton was good merchantable cotton, free from damage, and it was averred that it was not such cotton, but on the contrary thereof was bad, *damaged* and unmerchantable.·　　The following facts appeared on the trial : The defendants were the holders of a quantity of cotton.　　A broker who had sold for

them for years, and who had in his possession samples of the cotton, applied to the defendants to purchase, and exhibited to them the samples, which were of very fi ie, handsome, white cotton. They had been taken by the broker's sampler by the permission of the defendant, who saw them, and gave the broker their prices. The defendants said they would buy at the price demanded, if the samples were true ; the broker told them his sampler had drawn them ; the defendants requested him to look at the cotton, see whether the samples were correct and have other samples drawn, which was accordingly done, and the second samples shewn to the plaintiffs, and being found to correspond with the first, the bargain was concluded for 50 bales at $\frac{9}{100}$ per pound. The broker communicated the sale to the defendants without at the time giving the names of the purchasers. The cotton amounted to $1426,$\frac{5}{100}$, and was paid for in cash ; it was in the store of the defendants, in the place where both parties resided, and was shipped directly from thence on board of a vessel bound to *London.* The broker had not been able to find his book in which he had made an entry of the sale, but testified that in it he had made no reference to the sale being by sample, that it was merely a charge of brokerage against both sellers and buyers, and that he had received brokerage from both parties. The plaintiffs then offered in evidence depositions taken in *London,* under a commission to examine witnesses, to prove that the bales had been fraudulently packed in the interior of them with old, dry and damaged cotton ; which evidence was objected to by the defendants and excluded by the judge, who held that the sale was not a sale by sample ; that the plaintiffs not relying on the samples first drawn and exhibited to them, but requiring the broker to draw fresh samples, to test the accuracy of the first, had constituted the broker their agent, and that his drawing the second samples must be viewed in the same light as if the plaintiffs themselves had drawn them. The counsel for the plaintiffs then offered the depositions produced by them, in support of the *second count* in the declaration, which also being objected to, the judge ruled that no evidence of damages was admissible under the second count. The counsel for the plaintiffs insisted that it

NEW-YORK, was a question of fact for the jury to determine whether the
May, 1832. sale was a sale by sample or not, and that the evidence ad-
duced on that subject, together with the loss sustained by
Gallagher the plaintiffs, ought to be submitted to the jury, but the judge
v. refused to submit such evidence to the jury, and directed a
Waring. nonsuit to be entered. The plaintiffs move to set aside the
nonsuit, and ask for a new trial.

*H. Bleecker*, for the plaintiffs. This was a sale by *sample*,
and the defendants are liable for the want of correspondence
between the bulk of the article sold and the sample exhib-
ited. 5 *Johns. R.* 395. 4 *Cowen*, 440. 6 *id.* 354. The
broker being requested to test the correctness of the samples
first taken does not change the character of the sale ; on
the contrary it confirms it as a sale by sample. The plain-
tiffs did not by such request constitute the broker their agent
to inspect the cotton ; they simply desired him to take oth-
er samples, and if those exhibited to them were found to be
fair specimens they agreed to purchase. But if the sale be
not considered a sale by sample from which a warranty might
be implied, the plaintiffs were entitled to recover under their
*second count*, because the defendants had not delivered a
saleable article of the description contracted for, and there-
fore the evidence offered that the bales had been packed
with old, dry, and damaged cotton, ought to have been re-
ceived. Such was not the article which the plaintiffs had
agreed to purchase. Where manufactured articles are
not such as to answer the purpose for which they are bought,
the vendee is entitled to recover damages. 2 *Woodd.* 415.
3 *id.* 199. So if there be no opportunity for inspection,
there is an implied warranty that the article is saleable ;
2 *Kent's Comm.* 375 ; and in the case of a sale of cotton
in bales, even where the plaintiff's agent saw the bales,
but purchased by sample, it has been holden by this court
that the plaintiffs would be considered as having had no op-
oprtunity to inspect the bulk of the commodity. 4 *Cowen*,
444. When there is no opportunity to examine the com-
modity, the maxim *caveat emptor* does not apply ; it only ap-
plies where the purchaser is remiss in attention to those
particulars where attention would be sufficient to protect him

against inposition. 1 *Fonb.* 379, *n. h.* 2 *Caines*, 55. It cannot be said that a purchaser has been inattentive to his interests in not requiring bales of cotton to be cut open so that he might inspect the quality of the article. The convenience of trade forbids such particularity. In *Gray* v. *Cox*, 4 *Barn. & Cres.* 108, Lord Ch. J. Abbott expressed the opinion that if a person sold a commodity for a particular purpose, he must be understood to warrant it reasonably fit and proper for such service; and in the subsequent case of *Jones* v. *Bright*, 5 *Bing.* 533, the opinion of the chief justice was recognized as a true exposition of the law in such cases; Best, Ch. J. desirous to put the case then under consideration on a broad principle, says, " if a man sells an article, he thereby warrants that it is merchantable; that it is fit for some purpose," and that this was established in *Laing* v. *Fidgeon*, 6 *Taunton*, 108. Indeed the tendency of all the later decisions has been to adopt the principle of the *civil law*, that a man is bound to warrant the thing that he sells, although there be no express warranty, instead of adhering strictly to the rule of the *common law*, which does not bind unless there be a warranty in deed or law. The entry of the broker cannot be considered a note of the sale; it was a mere charge of brokerage, and therefore, though nothing was mentioned in the entry as to the sale being by sample, it cannot affect this case. Whether it was such sale or not, should have been submitted to the jury, who should have been instructed that if they found such sale, the law implied a warranty.

*J. L. Viele*, for the defendants. The general rule of the common law applicable to sales of personal chattels is, that when there is neither an express warranty or fraud, the vendor is not liable for any defect or inferiority in the article delivered. 2 *East*, 314. 2 *Caines*, 48. To this rule there are exceptions, but all of a character and founded upon principles which shew the propriety and strength of the rule, in all cases where the parties are in circumstances of perfect reciprocity; for there is no reason deducible from the principle of our law or from the soundest rules of morality why the misfortune of a *latent* or *concealed* defect should fall upon the vendor rather

than the vendee. The correctness of this proposition will appear by adverting to the exceptions and the principles upon which they are based. 1. There is always an implied warranty of title, that being a matter more especially within the knowledge of the *vendor*, and of which the *vendee* is permitted to be ignorant. 2. In the sale of *provisions* for domestic use a warranty of *wholesomeness* is implied, 12 *Johns. R.* 468, because it is a matter almost exclusively within the knowledge of the victualler. 3. Upon the same principle a different rule is applied to the *grower* or *manufacturer* of an article, from what is applied to the mere *vendor*. 4. When the commodity is not open to be seen and inspected, as when it is at sea on shipboard, or in another port, the law implies a warranty that it shall be merchantable ; and if the sale be by sample, that the bulk shall be of a kind with the sample. 4 *Campb.* 145. 6 *Taunt.* 108, *S. C.* It has been attempted to bring the case at bar within the last of these exceptions, but although some of the cases referred to push the application of the exception to the very verge, and perhaps beyond the principles upon which the exceptions were originally founded, they do not apply to the present case. The cases more particularly relied upon on the other side are *The Oneida Man. So.* v. *Lawrence*, 4 *Cowen*, 440, and *Andrews* v. *Kneeland*, 6 *Cowen*, 354. The last presented to the court no question but what related to the *authority* of an agent, and did not involve any principle applicable to this case. The former was a *sale by sample*, with a strong assurance of the character and quality of the article sold, and might well have been considered a case of express warranty. It is true the language of the chief justice in delivering the opinion of the court is perhaps sufficiently broad and comprehensive to conclude the defendant in this cause, but with deference it seems to me to have been uncalled for by the circumstances of that case, and to rest upon *Roe* v. *Beatie*, 2 *Nott & McCord's R. of S. Car.* 540, 1. That case having its origin in the jurisprudence of a state upon which has been engrafted in relation to this subject the doctrines of the civil law ; doctrines repudiated here, and not acquiesced in even there, may well be doubted as binding authority. Neither of these cases, however, can be considered

NEW-YORK,
May, 1832.
Gallagher
v.
Waring.

as impeaching the principle of *Parkinson* v. *Lee*, 2 *East*, 314, and *Seixas* v. *Wood*, 2 *Caines*, 48, the leading cases on this subject in England and in this country.

But this was not a *sale by sample.* The samples upon which the purchase was made were taken by the broker, at the request of the plaintiffs. It was therefore a purchase not upon the samples seen and furnished by the defendants, but upon an examination and inspection by the authorized agent of the plaintiffs. The broker was the mutual agent of both parties; he made an entry of the sale, which is the only proper evidence of the contract, and in it there is no reference to samples. The parties had an equal opportunity of knowing the character and quality of the cotton, and according to the general rule of law, as well as the principles to the exceptions thereto, the maxim of *caveat emptor* ought to be applied to this case. The mere fact that a sample was exhibited does not constitute a sale by sample; credit must be given to the sample, and on the strength of it alone the purchase must be made. If the vendee has the same opportunity for examination and inspection of the commodity that the vendor has, a warranty will not be implied. Such is the doctrine of Chancellor *Kent*, 2 *Comm.* 375. If this was not a sale by sample then the plaintiffs were not entitled to recover either under the *first* or *second* count of their declaration; for if it was not such a sale, they clearly cannot sustain their first count, and there is no principle of exception to the general rule upon which a warranty can be implied so as to recover under the second.

*By the Court*, NELSON J. If the second samples which were drawn had been of a superior quality to the first, there might have been some plausibility in the argument that the sale ought not to be viewed as one by sample on the part of the defendants, as they had not seen the second samples. It might then have been urged, that they did not intend to recommend the bulk of the cotton beyond the quality and condition exhibited by the samples which they had seen. The fact, however, is otherwise. Both samples were alike. The plaintiffs were satisfied with the quality of the first, and were

willing to buy if the bulk was equal to them ; and the only object of drawing the second samples was to test the fidelity of the first.    As the character or condition of the contract, nor the responsibilities of the defendants were in no respect altered by the production of the second samples, the construction given to it on the trial was, to say the least, extremely technical, and I think cannot be sustained.    Nor do I think it could be, had the samples been different.    The broker was employed by the defendants in the usual way to sell for them the fifty bales of cotton by sample.    His sampler had procured specimens, and he was furnished with the prices.    This constituted him their agent to sell the cotton by sample, and by virtue of this authority he did so sell to the plaintiffs.    The abundant caution of the plaintiffs to procure a faithful sample of the cotton from the broker cannot change the character of the sale ; on the contrary, it rather affords additional evidence that the purchase was made, and was intended to be made by sample, and hence the desire that they might be accurate. I presume it is a matter of course to procure samples the second time when practicable, to test the accuracy of the first, or for abundant caution.    If requested by the purchaser, it is certainly as much for the benefit of the seller as the purchaser, and as important to him, that the samples should be a fair exhibition of the bulk of the article, and a refusal would justly expose to suspicion the fairness of the party refusing. I have no doubt that the judge erred on this point.

The question is too well settled in this court to require examination or discussion, that a sale by sample *implies* a warranty on the part of the vendor that the bulk of the article sold corresponds in quality and goodness with the specimen exhibited.    I know of no exception or qualification to this rule.    5 *Johns. R.* 395. 4 *Cowen,* 440. 6 *id.* 354. 13 *Mass. R.* 139.    The case nearest to an exception is *Parkinson* v. *Lee,* 2 *East,* 314.    But it there appeared, and was so understood by the court, that the bulk of the article before and at the time of the sale answered fairly to the quality and goodness of the samples, and satisfied every undertaking to be fairly implied from their production at the sale.    The case only decided that a sale by sample by an innocent vendor did

not imply a warranty against a latent defect, by means of which, at a future day, the quality and goodness of the article might become deteriorated, and that for such a defect the vendor was answerable only on the ground of *fraud* or *express warranty.* 2 *Com. L. R.* 486. 4 *Campb.* 144,169, *S. S.* 1 *Com. L. R.* 327. 4 *Cowen,* 444, 5. If the bulk of the hops had been damaged at the time when the sample was shewn, it could not have been said, as is said in that case, that the samples answered fairly to the bulk ; and there certainly is no principle or reason for exempting one species of defect more than another, existing at the time in the article, from the implied warranty by sample ; nor do I believe the above case is an authority for such a distinction. The facts in that case may not have sustained the view of the court, and the soundness of the decision has been doubted. 13 *Mass. R.* 143. 15 *Com. L. R.* 532.

Whether the plaintiffs were entitled to recover on the second count is a question it may be proper to notice. That there must be a warranty express or implied, or fraud, to justify a recovery in damages for the difference between the quality and goodness of the article contracted for and that delivered, cannot be doubted. When a warranty will be implied, and when not, is not so clear ; and from the nature of the inquiry, I apprehend, must depend upon circumstances. A sale by sample implies a warranty that the bulk corresponds with the sample. Every sale implies a warranty of the title to the article ; and where the vendee has no opportunity of examining the article, the sale implies that the article delivered is of the kind and species of that which was contracted for, and is of good merchantable quality and condition ; as then the maxim *caveat emptor* cannot apply. These principles are fully supported by authority, and inculcate in commercial dealings sound maxims of morality, from which no honest man can claim an exemption.

It was said on the argument by the counsel for the defendants, that where the vendor had no means of inspecting the article, there was no implied warranty as to the quality or goodness of it. I am not aware of any case or principle which makes a distinction as to the liability of the vendor, where he

has and where he has not had an opportunity of inspecting the commodity sold, so far as that liability depends upon a warranty, if the vendee also has not had the opportunity of an examination. If the vendee has had such opportunity, the rule *caveat emptor* applies, which varies the relation of the parties. It is true, if the purchase is made without sample or inspection, and no specific agreement as to the quality of the article, then undoubtedly no implied warranty arises as to the fineness or particular degree of quality of the article, except that it is of a merchantable quality and condition. This is all the law requires under such circumstances, as there is nothing in the contract defining the particular quality. The principle is a familiar one, and enters into the every day business of men. If I engage a mechanist to manufacture an article in his line of business, without any stipulation, the law implies the obligation to make it in a skilful and workmanlike manner. So if I contract with a merchant to furnish me with a quantity of wheat at a future day for a certain price without any other stipulation, the law implies that it shall be of a good and merchantable quality and condition. Common honesty is exacted of all, in their dealings with one another, without any stipulation for it. Upon the above principles, even admitting that the sale was not by sample, the plaintiff was entitled to recover under the second count, if he could shew that the cotton was not of a good merchantable quality or condition; as on a purchase without an opportunity for inspection by the vendee, the law implies a warranty by the vendor to this extent, whether the *vendor* has had an opportunity of inspection or not. Under such circumstances, it would be as absurd to permit a vendor to fulfil his contract by delivering an article of the kind contracted for of no value, as it would be to permit him to fulfil it by delivering an article of a totally different kind, as oakum instead of cotton.

It is supposed that the memorandum made by the broker in his book is equivalent to a bought and sold note, and is the only evidence of the agreement between the parties; and according to that memorandum, the sale was not one by sample. If the supposition of the defendants was correct, the inference would no doubt follow. 3 *Wend.* 459. 1 *Holt*, 172.

4 *Campb.* 145. 15 *East*, 29. But it is obvious from the evidence of the broker that his memorandum was nothing more than his charge of brokerage, and was not intended as a note of the contract between the parties; and this view is confirmed by an inspection of the memoranda thus kept by him. The whole agreement rested in parol. It would be dangerous to adopt a memorandum of the broker, made without any intent of putting in writing the contract, and in fact made for another purpose, as evidence of the agreement between the parties.

Nonsuit set aside and new trial granted; costs to abide the event.