DE MARQUIS MISNER *et al.*, appellants, *v.* ELIHU GRANGER, appellee.

*Appeal from Cook.*

It is a well established rule of the Common Law, that a purchaser takes property at his own risk, unless he exacts a special warranty, where there has been no fraud on the part of the vendor. To this rule, however, there are exceptions. There is an implied warranty on the part of the vendor that he has a good title to the property he sells, and where a quantity is sold by a sample, that the bulk is of as good a quality. So, also, in the case of executory contracts for the sale of personal property, in the absence of an express stipulation to that effect, the law implies that it shall be of a fair, merchantable quality and condition; and this rule holds whether there be a sample exhibited, or there is an opportunity for inspection. But, in such case, there is no implied warranty as to fineness or particular degree of quality of the article sold.

Where the manufacturer sells his own goods or wares, and nothing is said of the quality, there is an implied warranty that they are of a fair, ordinary quality according to their appearance. There is, however, a qualification to this rule, as where the article is of such a character that ordinary skill cannot ordinarily produce a good article, but success depends in a great measure on chance. Sometimes, also, the law will imply a warranty even of an extraordinary quality in the article sold, as where an article is furnished for a given, specific purpose, and not for the ordinary and general use to which such articles are applied.

In an action of *assumpsit* upon a promissory note, it was alleged in the pleas that it was given for the price of a threshing machine, bought by the defendant of the plaintiff, of which the following was the note or memorandum of the sale: "Chicago, July 12, 1843. Mr. De Marquis Misner bought of E. Granger, one threshing machine at one hundred and eighty dollars, for which he has paid forty four $44. The remaining $136, he is to give his and his brother Fletcher Misner's note. The said note is to be delivered at the time of the delivery of the machine, say about the 22d inst. The machine is to be in readiness for use at that time. Elihu Granger." It was further alleged that Granger was a machinist and carrying on that business; also, that he was a machinist, and carrying on a foundry. All the pleadings averred that, upon trial, the machine would not answer the intended purpose, &c. None of them, however, averred that Granger was the manufacturer of the machine: *Held,* that the pleas were defective for not averring a warranty, or that the party undertook and promised that the article was of the given quality.

ASSUMPSIT, in the Cook Circuit Court, brought by the appellee against the appellants, and heard before the Hon. Jesse B. Thomas, at the November term 1847, on demurrer

to pleas, which was sustained.   The defendants excepted to
the decision, and pleaded the general issue, when a judgment
was rendered by the Court for the amount of the note sued,
with interest.   The defendants then appealed.

The cause was submitted in this Court upon the written
arguments of counsel.

*N. B. Judd,* for the appellants.

1.   The contract of sale, as set up in the several pleas,
shows an agreement by the vendor that the machine should
be in readiness for use at the time of its delivery.

If that agreement on the part of the vendor was not com-
plied with, the damages resulting from such non-compliance,
is a proper matter to be deducted from the price when a suit
is brought for it.   *Edwards* v. *Todd,* 1 Scam. 42; *Nichols*
v. *Ruckels,* 3 do. 228; *Hawks* v. *Lands,* 3 Gilm. 227.   Each
of the pleas shows a breach of that agreement, and the
defendants were entitled to damages under them.

2.   No particular form of words is necessary to constitute
a warranty; any representation as to any material fact which
is relied upon by the parties will amount to a warranty.

On the sale of a manufactured article designed and intend-
ed for a particular purpose or use, a representation at the
time of the sale, or a covenant in the bill of sale that the
machine is in readiness for use, amounts to, and is, a war-
ranty that the machine is reasonably fit to use in the business,
and for the purposes for which it was intended and sold.

The machine, it is alleged in the plea, was purchased for
a particular purpose.

There was a representation and agreement by the vendor
that the article sold was in readiness for use.

Each of the pleas alleges that such was not the fact, and
shows wherein the defects consisted, one of them alleging
that the material and workmanship were both so bad that
the machine entirely failed to be in readiness for use.

The defendants were not bound to call the agreement or
representations a warranty; they were only bound to plead the

facts, and it is for the Court to say whether the facts constitute a warranty.

The pleas then show an express warranty and a breach of it, and were, therefore, a good defence.

3. On the sale of manufactured articles, there is an implied warranty that the article sold is reasonably fit for the purpose for which it was sold and intended to be used. *Gray* v. *Cox*, 4 B. & C. 108; *Jones* v. *Bright*, 5 Bing. 533; *Brown* v. *Eddington*, 2 M. & G. 279.

The pleas show that this was a manufactured article and sold for a particular purpose. The agreement also shows that the vendor was the manufacturer. The bargain is made on 12th July, and the vendor agrees to have the machine in readiness for use, and deliver it on 22d of July.

The facts pleaded bring this cause within the rule laid down in *Gray* v. *Cox*, and *Jones* v. *Bright*.

The pleas show a breach of the implied warranty that the article sold should be reasonably fit for the purposes for which it was sold.

4. The demurrer extends back and reaches the first error in pleading. The first error was in the first count of the plaintiff's declaration. In that count there is no averment as to where the cause of action accrued. It may be said that by pleading the general issue, the party is estopped from going back to the declaration. In the case of the *Auburn & Owasco Canal Co.* v. *Leith*, decided in the Supreme Court of New York, and reported in the Sept. No. of the Law Reporter, 1847, the whole question is discussed and the various *dicta* on that subject overruled; and it is *held*, that by demurring to a special plea, the count to which it is an answer is reached, notwithstanding the general issue may have been pleaded.

*I. N. Arnold*, for the appellee.

Were defendants' pleas good?

The defendants' plea sets forth a bill of sale of threshing machine from Granger to Misner, which was the consideration of the note; but they do not allege either an express nor

implied warranty, nor fraud, nor that Granger was the manufacturer of the machine, nor a return of property, or offer to return it.

It is necessary to allege and prove either fraud or express warranty. *Towell* v. *Gatewood*, 2 Scam. 25.

A bill of sale of tobacco, describing it as good, first rate tobacco, is no warranty, neither is the sale of a threshing machine a warranty that the machine sold is a good one. This case is conclusive on the point of express warranty. *Ib.*

*Cash* v. *Giles*, 14 Eng. Com. Law R. 372, is a case which not only settles the principle, but is in relation to same subject matter. The action was *assumpsit* to recover the price of a threshing machine. The Opinion is short, and is therefore quoted: "If defendant meant to insist that this threshing machine was not a good one and suitable to its intended purpose, it was his duty either to have immediately returned it, or to have given immediate notice to plaintiff to take it away. Now, instead of this, he keeps it for several years. I am clearly of opinion that, as he has done so, he has waived all objections to its goodness, and is bound to pay for it."

In this case, defendants do not aver in their pleas either a a return, or offer to return the machine.

In *Gray* v. *Cox*, 4 B. & C. 108, cited by the appellants, it was held, that the vendor was not liable, because there was neither an express warranty nor fraud. The article sold was coffee at market price, which turned out to be a poor article.

In the case of *Jones* v. *Bright*, 5 Bing. 533, the *narr.* averred fraud, and there was an express warranty. The vendor was a manufacturer. In this case, it was not averred that he was. In fact he was the mere seller.

It is no great presumption to suppose that the vendee knew what a threshing machine was, and whether the machine bought was a threshing machine or not.

The general doctrine, that the seller is answerable only for an express warranty and fraud, is clearly laid down in 2 Kent's Com. 478.

The cases of *Hart* v. *Wright*, 17 Wend. 267, and *Waring* v. *Mason*, 18 do. 425, strongly and ably sustain the rule of *caveat emptor.*

The Opinion of the Court was delivered by

CATON, J. The subject of implied warranties on the sale of chattels has perplexed the Common Law Courts for a long time, and has been a source of many apparently contradictory decisions. The universal doctrine of the Civil Law is, that there is an implied warranty of the vendor, that the article sold is what it appears to be, and is sold for sound and of a merchantable quality;—in other words, the seller takes the risk of all defects which are not disclosed at the time of the sale.

In the case of *Stuart* v. *Wilkins,* Douglas, 20, Lord Mansfield held that the vendor of a horse was not responsible for any defects, unless he was guilty of a fraud or had made an express warranty. Before that time it is said by Grose, J., in *Parkinson* v. *Lee,* 2 East, 314, it was a current opinion, that a sound price given for a horse was tantamount to a warranty of soundness. The rule laid down by Lord Mansfield in 1778, has since been followed with great uniformity, not only by the Courts in England, but in most of the United States, where the Common Law prevails, although it appears occasionally to have been departed from in the case of a sale of slaves; and, in South Carolina, was applied for a time to sales of other property.

It may now safely be asserted as the well established rule of the Common Law, that the purchaser takes the property at his own risk, unless he exacts a special warranty, where there has been no fraud on the part of the seller. 2 Black. Com. 451; *Seixis* v. *Woods,* 2 Caines, 48; *Swett* v. *Colgate,* 1 Wend. 185; *Conner* v. *Henderson,* 15 Mass. 319; *Hart* v. *Wright,* 17 Wend. 267; *Holden* v. *Dakin,* 4 Johns. 421; *Davis* v. *Meeker,* 5 do. 354; *Cunningham* v. *Speer,* 13 do. 392; *Thompson* v. *Ashton,* 14 do. 316; *Hoyt* v. *Boyle,* 5 Gill & Johns. 110.

To these decisions many might be added from different States, but it is unnecessary. The law seems to be so well settled that we do not feel ourselves at liberty to inquire whether the rule of the Civil Law, or of the Common Law is the best adapted to promote the ends of justice and the good

order of society.   It is probably more important that the rule which is to govern, should be definitely settled, and well known, than that either particular one should be adopted.

Like most other general rules, this has its exceptions, which appear to be pretty well settled, and are sustained by good reason.

The Common Law has always held, that there is an implied warranty on the part of the vendor that he is conveying a good title to the vendee in the sale of personal property. Where a quantity is sold by sample, the law implies a warranty that the bulk is of as good a quality as the sample. *Sands & Camp* v. *Taylor*, 5 Johns. 395; *Andrew* v. *Kneelan*, 6 Cowen, 354; *Bradford* v. *Manly*, 13 Mass. 139; *Gallagher* v. *Waring*, 9 Wend. 20; *Oneida Manufacturing Society* v. *Lawrence*, 4 Cowen, 440.

So, also, in the case of executory contracts for the sale of personal property, the law implies as a part of the contract, in the absence of any express stipulation to that effect, that the property shall be of a fair merchantable quality and condition,(*Long* v. *Fidgeon*, 1 Eng. Com. L. R. 327,) and it seems to be the same where the purchase is made without sample, or an opportunity of inspection, although, if there is no specific agreement as to the quality, no warranty is implied as to the fineness or particular degree of quality of the article sold. *Gallagher* v. *Waring*, 9 Wend. 28.   In such cases it would seem manifestly unjust to say *caveat emptor*, when the purchaser has no opportunity of looking out for himself.   If there is no fraud, and he takes the article on inspection, or with an opportunity to inspect it, he ought not to complain.   In speaking of the general rule on the subject of warranties in the sale of chattels, Mr. Justice Cowen, in the case of *Hart* v. *Wright*, 17 Wend. 272, after stating the general rule of *caveat emptor*, says:   "There are certainly exceptions but they depend on peculiar circumstances.   One is the sale of provisions to be used as food for mankind.   This rests on a regard to the public health, ( *Von Brocklin* v. *Fonda*, 12 Johns. 468,) and I am not aware of any other case in this State, wherein a warranty of quality is engrafted on a sound

price alone." I am aware that Mr. Senator Tracy, in the review of this very case, in 18 Wend. 458, in the Court of Errors, has opposed with all the force of his luminous mind this proposition, but he produces but two authoities against it, (Dyer, 75, and *Emerson* v. *Brighton,* 10 Mass. 197,) and finds himself under the necessity of joining Lord Redesdale in discrediting Blackstone, as authority generally, who has laid down the same principle. 3 Black. Com. 166. Notwithstanding the apprehensions which Mr. Tracy entertained from the progressive principle of the present age, we think the exception is founded in reason, supported by authority and required by considerations of public policy.

Again, generally, where a manufacturer sells his goods or wares, and nothing is said about the quality, he is held to warrant them to be of a fair ordinary quality, according to their appearance; as, if a manufacturer sell an axe and upon trial, it prove to be so hard as to be unfit for use, there the vendor is responsible for the defect. To this there may be qualifications, as where the article is of such a character that ordinary skill cannot ordinarily produce a good article, but success depends in a great manner upon chance.

Sometimes, also, the law will imply a warranty even of an extraordinary quality in the article sold, as where an article is furnished for a given, specific purpose, and not for the ordinary and general use to which such articles are applied.

In *Jones* v. *Bright,* 15 Eng. Com. Law R. 529, the bargain was this: A third person, who introduced the plaintiff to the defendants, said: "Mr. Jones is in want of copper for sheathing a vessel;" and one of the defendants answered: "We will supply him well." The Court says: "As there was no subsequent communication, that constituted a contract, and amounted to a warranty." And the Court in that case lays down this rule: "If a man sells generally, he undertakes that the article sold, is fit for some purpose; if he sells it for a particular purpose, he undertakes that it is fit for that particular purpose." In this case, the defendants were the manufacturers of the copper, which was selected by the plaintiff's shipwright. The declaration averred a warranty

of the copper which proved to be defective, and the plaintiff recovered.

In *Brown* v. *Eglington*, 40 Eng. Com. Law R. 371, the plaintiff had applied to the defendant for a crane rope to raise pipes of wine. The defendant sent his foreman to examine the crane, and take an admeasurement for the rope, and then procured one Dunn to manufacture it, which proving defective, the plaintiff was allowed to recover on the ground of an implied warranty. In this case, the Court say that the defendant should be considered the manufacturer of the rope, although he employed another to make it. In *Gray* v. *Cox*, 10 Eng. Com. Law R. 283, the defendants were copper merchants, not manufacturers, and the Court was divided in opinion whether the law would imply a warranty from a sound price. The circumstances of this case were in all respects like those in the case of *Jones* v. *Bright*, except that the vendors were not the manufacturers of the copper.

I remember a case, which is not now before me, where the plaintiff applied to the defendant, who was a shipwright, to purchase a vessel for the purpose of transporting a particular kind of goods which required an unusually tight vessel, and the defendant sold him a barge, which was then nearly finished laying at his wharf, for that particular trade. I think the defendant had previously furnished the plaintiff with vessels for the same trade. On the first voyage the barge leaked so much as to damage the cargo, and the defendant was made to answer in damages on an implied warranty, that the vessel was fit for that particular trade. There the defendant was the builder of the barge.

To apply these principles to these pleas. They aver that the note, for which the suit is brought, was given for the balance of the price of a threshing machine, bought by D. Misner of the appellee, of which the following is the agreement or note of the sale:

                                    " Chicago, July 12, 1843.

Mr. De Marquis Misner bought of E. Granger one threshing machine, at one hundred and eighty dollars, for which he has paid forty four $44. The remaining $136 he is to give

his and his brother Fletcher Misner's note. The said note is to be delivered at the time of the delivery of the machine, say about the 22d inst. The machine is to be in readiness for use at that time.

(signed) Elihu Granger."

One of the pleas avers that Granger was a machinist, and carrying on said business in Chicago; and the second and third special pleas aver that he was a machinist and carrying on a foundry in Chicago. They all aver that the machine was received and the note given before it was tested, and that, upon trial, it would not answer the purpose for which it was intended and purchased. Some of the pleas set out particularly the parts that failed. One of the pleas concludes with a failure of the consideration of the note, and the others set out special damages and offer to set them off, &c.

A special demurrer was filed to these pleas assigning, 1st, no averment of express or implied warranty or fraud; 2d, no proper breach; 3d, It is not averred that Granger manufactured the machine, and the pleas are argumentative.

The demurrer was sustained to these three pleas, which presents the only question that we think it necessary to examine.

It is insisted that these pleas show an implied warranty of this threshing machine by Granger, 1st, because it is a manufactured article; 2d, because Granger was the manufacturer of the machine; and 3d, that it was furnished for a particular, special purpose.

The first proposition is true in fact, but I find no satisfactory authority showing that the conclusion drawn from it is law. In order to make out the implied warranty, it requires also that the second of the above propositions, that is, that Granger was the manufacturer of the machine, should be shown. This neither of the pleas avers. One of the pleas says that he was a "machinist and carried on said business in Chicago." This is far from being an averment that his business was making threshing machines, or that he made this machine. The truth probably is, that there are but very few machinists who make threshing machines. In order to make out Granger a

manufacturer of threshing machines, we should have to re-
verse the rule of presumptions and intendments and raise them
in favor instead of against the pleading. The same may
be said of the other two pleas in this respect. They are alike,
and say, "the said plaintiff being a machinist and carrying on
a foundry in Chicago." We understand that there is only a
portion of a threshing machine that is cast at a foundry.

Admitting that the general vendor, who is not the manu-
facturer of an article which he sells for a particular purpose,
impliedly warrants it to answer that purpose—which we are
not now prepared to say is the law—these pleas do not show
such a case. They do not show that this machine was sold
for any other purpose than that to which threshing machines
are ordinarily and generally applied. It is not like the case
of the rope which was sold for the express purpose of raising
pipes of wine; or of the vessel which was sold for the purpose
of transporting a particular kind of goods, where warranties
were implied that they were fit for those particular uses.

For aught that appears from these pleas, Granger was a
mere dealer in and not a manufacturer of the article; entirely
ignorant of the defects complained of, and that it was received
by Misner after an inspection of it, when he had as good a
chance to judge of its quality as Granger had. In such case
the Common Law says, "look out for youself."

But these pleas are defective in form. Instead of plead-
ing the evidence in the case from which the party supposed
the law would imply a warranty, he should have averred the
warranty at once, or at least that the party undertook and
promised that the article was of the given quality, and not
have contented himself with setting forth the evidence by
which he intended to prove the warranty. Mr. Gould, in
his work on Pleading, page 59, § 19, says: "There is indeed
no such thing as an implied promise in pleading; or rather,
the fact of its being implied appears only in evidence, and
never upon the record." Were it otherwise, pleadings would
soon become as voluminous as depositions. As well might a
plaintiff declare on an account for goods sold, &c. and omit
the averment of a promise to pay by the defendant. Ordi-

narily that is but an implied promise, and yet it would hardly be contended that a declaration would be good without averring a promise to pay. In all of the cases of implied warranty which I have examined, the pleadings show directly, either that the party warranted, or that he undertook and promised that the article was of the particular quality.

The demurrer was properly sustained, and the judgment of the Circuit Court is affirmed with costs.

*Judgment affirmed.*