## PECK *vs.* ARMSTRONG.

A contract for the sale and delivery of corn, requires that the corn shall be in good condition, and marketable, without any express words to that effect.

And when corn delivered in pursuance of such a contract is not good and merchantable, but is damaged, the purchaser has a right to refuse to receive it, and to rescind the contract, and to recover back the money advanced upon it, with interest.

The defendant, having contracted to sell to G. a quantity of corn, delivered the same to C., a warehouseman, with G.'s consent, for the purpose of fulfilling his contract, taking from C. receipts stating that he had received the corn of the defendant *in store.* But C. was not authorized to receive any but merchantable corn, upon the contract, or to waive any substantial defects. *Held* that the receipts were valid and binding contracts, determining conclusively on what account the corn was received, and in what character C. received it. That their legal effect was to retain the title to the corn in the defendant, with the right to withdraw the grain at pleasure, or to make any other appropriation of it. And that such delivery to C. was not to be deemed a receipt of the grain by G. as a fulfillment or on account of the contract.

*Held, also,* that the legal effect of such receipts could not be changed by parol evidence of conversations tending to a different conclusion.

Peck v. Armstrong.

APPEAL from a judgment entered upon the report of a referee. The action was brought to recover damages for the non-performance of a contract for the sale and delivery of a quantity of corn, and to recover back $100 paid by the plaintiff to the defendant, on account of said contract. The following facts were found by the referee: That in the month of April, or May, 1859, one Theodore S. Goddard employed the plaintiff to purchase a quantity of corn for him, to be good and merchantable, and of the quality and kind suitable for the New York city market, and authorized the plaintiff to employ agents under him. That one William A. Cook kept a warehouse at Lima station; that the plaintiff employed him to purchase such corn for Goddard, and authorized him to contract for corn to be delivered at his, Cook's, warehouse, and to receive and pay for the same. That Cook made an agreement with the defendant for the purchase of his crop of corn then on hand, at the same time paying him $100 on account of such purchase, and as part payment for the corn. That the defendant thereupon executed and delivered a receipt in writing, in these words:

"Rec'd of Wm. A. Cook one hundred dollars, to apply on sale of my crop of corn, from five to six hundred and fifty bushels, sixty pounds to the bushel, at 85 cents per sixty pounds, to be delivered at South Lima.

May 14, 1859.                    THOMAS ARMSTRONG."

That said contract was entered into for and on behalf of said Goddard, and for his benefit solely, the money paid being the money of Goddard. That under and in pursuance of this contract the defendant commenced to thresh the corn, and draw it to the warehouse of Cook and deliver the same. That he delivered 496 bushels and 17 pounds; the same being delivered in bags. That Cook examined a portion of the corn, and did make some objection to it, but did not refuse to receive it on the contract. That neither the plaintiff nor Goddard saw or examined the corn until after it was all delivered, when they refused to receive it, on the ground

that it was not merchantable corn. That as the corn was delivered, Cook gave the defendant separate receipts for each load, in all respects similar to the receipt for 496 bushels 17 pounds, hereinafter set forth. On the 13th of June, 1859, after all the corn was delivered, the defendant demanded his pay, of Cook, who promised to write to Goddard that the corn was delivered, and to come up, or send the money to pay for it; and he did thereupon write to Goddard. That the defendant then produced the receipts which had been given from time to time as the corn was delivered, and from them computed the whole amount delivered, for which Cook gave to the defendant a receipt for the whole, as follows: "Received of Thomas Armstrong in store, 496 bush. 17 lbs. of corn. So. Lima, June 13, 1859. Wm. A. Cook." The defendant subsequently applied to Cook for his pay, for the corn, and on the 25th of June, Cook told him that Goddard had been up, and refused to take the corn because it was not marketable, and that he, the defendant, could sell it to whom he pleased. That soon after this the defendant sold the corn to another person, for 75 cents per bushel, that being then the highest market price for corn. That after the corn was so sold, the defendant tendered to Cook $50.40 of the money received of Cook on the contract, in advance, which Cook declined to receive. That at the time the contract was made, the market price of corn was 85 cents a bushel of 60 pounds; that before the corn was delivered the market fell to 75 cents a bushel, which was the price at the time the delivery was completed. That the corn delivered was not good or merchantable corn, but was damaged, by means of horse manure and urine, and a portion of musty corn having been mixed with it by the defendant, and that Cook appropriated a portion of the corn to his own use. That after the 25th day of June, 1859, Goddard and the plaintiff went to Cook's warehouse and examined the corn, which was the first time they had seen it, and claimed that it was not merchantable, and refused to pay for it, or receive it. That afterwards Cook

demanded of the defendant the payment of the $100 advanced to him, which he refused to pay. That before the commencement of this action Goddard and Cook severally executed to the plaintiff assignments of each of their interests in the subject matter thereof.

The conclusions of law of the referee, from the above facts, were, that the receipt, of June 13, 1859, was conclusive evidence that the corn in question was not delivered by the defendant and accepted by Cook, under the bargain made for the sale and delivery of the corn, on the 14th of May, 1859. That said receipt was a warehouse receipt, importing a contract that could not be explained or contradicted by parol; and that in arriving at a conclusion on the question whether the corn was delivered and accepted on the contract, and whether the defendant had performed the contract, on his part, the acts and declarations of the parties at the time of, and subsequent to, the delivery, could not be taken into consideration. That the receipt was conclusive evidence that Cook held the corn as a warehouseman, and as bailee for the defendant, subject to the right of Goddard or the plaintiff to accept or reject the same after examination, as it might or might not be the quality of corn which the defendant contracted to sell. That in consequence of the horse manure and urine, and the damaged corn mingled with the corn in question, it was not in good marketable condition, and was not good merchantable corn. That the contract of sale made by the defendant required him to deliver corn in good marketable condition. That because the corn was not in good marketable condition, the plaintiff and Goddard were justified in refusing to accept and pay for it. That the defendant had failed to comply with and perform the condition of the contract, on his part; and that as a measure of damages, the plaintiff was entitled to recover of the defendant the sum of $100 so advanced by Cook, with interest from the time of the demand. To these conclusions of law the defendant excepted.

*George F. Danforth,* for the appellant.

*M. S. Newton,* for the respondent.

*By the Court,* WELLES, J.   The defendant's contract of
May 14th, 1859, for the delivery of the corn, required it to
be in good condition and merchantable; not in terms, but
by an implication just as binding as if the obligation had
been expressed.   Cook, in purchasing and receiving the corn,
acted as sub-agent, under the plaintiff, for Goddard.   He had
no authority from Goddard or from the plaintiff to purchase
any but good and merchantable corn.   The referee finds that
the corn which Goddard authorized the plaintiff to purchase,
or cause to be purchased by others for him, was to be good
and merchantable; and such would be the legal interpreta-
tion of the transaction, in case nothing had been said by the
parties in relation to the quality of the corn.   This the de-
fendant knew, or was bound to know, and must be treated
as if he actually knew it.

The corn delivered was not good or merchantable, but was,
as the referee finds, "damaged by means of horse manure
and urine, and a portion of musty corn having been mixed
with it by the defendant."

The only question remaining is, did Goddard receive the
corn as a fulfillment or on account of the contract of the de-
fendant to deliver.   He has never in fact received any corn
of the defendant, on the contract or otherwise, but on the
contrary, had distinctly refused to receive it, for the reason
that it was not merchantable.   If any person authorized by
him to waive the defects in the quality of the corn has re-
ceived it for him, he is concluded thereby, the same as if he
had received it himself, and, with a knowledge of the condi-
tion of the corn, had waived the defects.   But neither Cook
nor the plaintiff was authorized to receive any but merchant-
able corn upon the contract, or to waive any substantial de-
fects in it.   But no corn has been received of the defendant

on the contract, by any one. Cook, to whom the corn was delivered, was not only the agent of Goddard in contracting for the purchase of the corn of the defendant, but was also a warehouseman, and received the corn into his warehouse *in store* for the defendant. Such is clearly the legal effect of his receipts given from time to time, as the corn was delivered, and of the one given for the whole quantity, after it was all delivered, when the small receipts were taken up by Cook. They were essentially valid and binding contracts, and determined conclusively on what account the corn was received, and in what character Cook received it. By them he incurred all the liability and acquired all the rights incident to his business as a warehouseman, and was bound to ordinary diligence, and responsible for losses by ordinary negligence. He was bound to deliver the corn at any time to the defendant on request, or to his order. And although it is quite evident that the intention of the defendant in delivering the corn at the warehouse was for the purpose of fulfilling his contract, still, the legal effect of the receipts was to retain the title to the corn in himself, with the right to withdraw it at pleasure, or to make such other appropriation of it as he might choose. And the legal effect of the receipts cannot be changed by parol evidence of conversations tending to a different conclusion.

The $100 paid the defendant on the contract has been demanded and refused. The defendant has sold the corn to another purchaser, and should refund the money received on the contract which has been rescinded.

The judgment, I think, is right, and should be affirmed.

Judgment affirmed.

[MONROE GENERAL TERM, September 1, 1862. *Johnson, J. C. Smith* and *Welles*, Justices.]