## THE WILLIAM ANSON WOOD MOWER AND REAPER COMPANY, RESPONDENT, v. F. PORTER THAYER, APPELLANT.

*Contract by a manufacturing company to deliver to an agent machines made by it, to be paid for by him at a fixed price, and a commission to be retained by him — there is an implied warranty that the machines are reasonably fit for the purposes for which they are intended — when the rendering of an account, not containing items of loss arising from a breach of contract by the manufacturer, does not deprive the agent of his right to recover therefor.*

On the trial of this action before a referee, it appeared that on November 21, 1879, the parties to this action entered into a written agreement, by which the plaintiff granted to the defendant the right to the exclusive sale and control of the machines manufactured by the plaintiff in a certain territory therein mentioned, upon the consideration and agreement that the defendant should order 400 of plaintiff's machines, to be paid for by the defendant on shipment at Albany; one-half in cash and the balance by his notes, payable on or before January 1, 1881, less commissions of twenty-five per cent of the prices of the machines. The complaint alleged performance by the plaintiff, and demanded judgment for a balance of $9,169.29, claimed to be due to it for machines delivered to the defendant between January 1, 1880, and July 1, 1881, after deducting all payments made by the defendant and his commissions and certain credits.

The defendant by his answer admitted his agreement and denied that the plaintiff had performed the contract on its part, and alleged that the plaintiff had delivered imperfectly constructed machines, and machines unsuitable for the purpose for which they were manufactured, and that the defendant had, by reason thereof, sustained damages.

The referee found " that some of the machines so shipped were not constructed in a good and workmanlike manner, but were defective; it was impossible to keep them in gear; they could not perform what such a machine should perform; \* \* \* in consequence of the defects in the machines shipped, some of those which were sold were returned to the (defendant's) agents who sold them, and sales of them were lost; " that upon complaints being made by the defendant to the plaintiff, the plaintiff promised to and did repair and put in order the machines as to which complaint was made.

The referee further found that, after the making of said agreement, by the acts and declarations of the parties, as proved, it appeared to have been waived as to most of its material provisions, and that the parties acted under an arrangement or understanding that the defendant should sell the machines as agent for the plaintiff, accounting for such as were sold at the prices received by defendant therefor, less commissions at the rate of twenty-five per cent, and returning an account for those unsold.

The defendant requested the referee to find that the plaintiff, by furnishing and shipping machines upon defendant's order which were not constructed in a good and workmanlike manner, and were not fit for the use for which they were intended, violated its contract with defendant.

*Held,* that the referee erred in refusing to so find, as the contract, construed with reference to the nature of the business, implied a warranty on the part of the plaintiff that the machines would be reasonably fit for the purposes for which they were intended and that they were salable.

The referee acted upon three exhibits, setting forth the list of machines sold, the list of machines on hand, the list of machines returned to Albany, etc., and an exhibit containing a statement of the accounts between the parties rendered by the defendant to the plaintiff February 1, 1883, to which he found that the plaintiff made no objection till about the time of the commencement of this action on April 5, 1884, except as to certain items which the referee struck out, he then directed judgment to be entered in favor of the plaintiff, and refused to allow the defendant anything for losses sustained by him, by reason of the delivery to him of unmerchantable machines.

*Held,* that while the account rendered by the defendant was some evidence that he did not intend to charge for commissions lost because of the defective machines, as no claim was made for the same therein, it did not conclude him, especially as some of its items were challenged by the plaintiff.

*Young* v. *Hill* (67 N. Y., 162) followed.

That the defendant did not, by rendering such account, waive his rights to recover for the injury which the plaintiff's breach of contract had already caused him.

The referee charged the defendant with $742, being for thirty-three machines at thirty dollars each, less commissions, at twenty-five per cent, these machines being the same which were reported by defendant as being on hand February 1, 1883.

*Held,* that, as no such cause of action was alleged in the complaint, and there was no evidence that the machines were salable, or were sold, or were worth thirty dollars each, or any other price, the referee erred in charging the defendant with that amount.

Appeal by the defendant from a judgment entered in the Albany county clerk's office on June 7, 1887, upon the report of a referee.

The complaint set forth an agreement, in writing, between the parties, made November 21, 1879, by which the plaintiff granted to the defendant the right to the exclusive sale and control of the machines manufactured by the plaintiff, in the New England States and the provinces of New Brunswick, Nova Scotia and Prince Edward's Island, and all export trade from the United States, except Canada, upon the consideration and agreement that the defendant should order 400 of plaintiff's machines, to be paid for by defendant on shipment, at Albany, one-half in cash and the balance by his notes, payable on or before January 1, 1881, less commissions of twenty-five per cent. The prices of the machines to be the same as established in the same territory by the Walter A. Wood and Buckeye companies. The complaint alleged performance by the plaintiff, and that between January 1, 1880, and July 1, 1881, plaintiff delivered on board cars and steamboat, at Albany, to defendant, as directed by him, machines which, at the price agreed upon, amounted in value to $44,602.07, upon which the defendant had made payments and was entitled to commissions and credits amounting to $35,432.78, leaving a balance due plaintiff of $9,169.29, for which judgment was demanded. The defendant, by his answer, admitted the agreement, denied that the plaintiff had performed on its part, but alleged that, on the contrary, it had delivered imperfectly constructed and unmerchantable machines, and machines unsuitable for the purposes for which they were manufactured. The answer also denied that machines of the value of $44,602.07 had been delivered to defendant, and denied that the balance alleged by plaintiff, or any other balance, was due to it; it alleged payment in full; also, an account stated by defendant, and acquiesced in by plaintiff; also, alleged damage to defendant in the sum of $5,000, because of the delivery to him of unmerchantable machines.

The referee found that the plaintiff, during the year 1880, shipped to the defendant, or upon his order, a large number of machines as set forth in three exhibits, A, B, D. Exhibit A set forth the "list of machines sold and settled;" exhibit B the "list of machines on hand;" exhibit D the "list of machines returned to Albany," etc. Exhibit No. 3 was a statement of the accounts between the parties.

These exhibits were the accounts rendered by the defendant to the plaintiff February 1, 1883. The defendant in 1881 rendered the plaintiff a statement of which exhibit A was a continuation, the latter embracing items subsequent to the date of the first statement. The referee also found "that some of the machines so shipped were not constructed in a good and workmanlike manner, but were defective; it was impossible to keep them in gear; they could not perform what such a machine should perform; the material of which a portion of the said machines was constructed was poor; some of the one-horse machines were so constructed that they would not revolve, and in consequence no action could be got." "In consequence of the defects in the machines shipped, some of those which were sold were returned to the (defendant's) agents who sold them; and sales of them were lost. Some of the sub-agents under defendant refused to settle and account for machines because of the defects above stated. In consequence of the defects in the machines above mentioned, complaints were made to the defendant from various portions of the territory assigned to him by his contract with plaintiff where said machines had been sold." "In response to the complaints which were made to the defendant, and by defendant communicated to plaintiff, plaintiff promised to, and did, repair and put in order the machines as to which complaint was made."

The referee also found that the plaintiff made no objection to any of the statements rendered by the defendant until about the time of the commencement of this action (April 15, 1884), except as to defendant's commissions upon freight and upon an item of $1,940 for "insurance collected;" that the plaintiff discontinued its business in the autumn of 1880, and the plaintiff's obligation to deliver further machines was terminated by mutual consent. The referee further found that, "after the making of said agreement, by the acts and declarations of the parties as proved, it appears to have been waived as to most of its material provisions, and the parties acted under an arrangement or understanding that the defendant should sell the machines as agent for plaintiff, accounting for such as were sold at the prices received by defendant therefor, less commission at the rate of twenty-five per cent, and returning and accounting for those unsold, and accounting for the extras delivered at the rate of fifty per cent from list prices." The referee there-

upon took the exhibits A, B, D and No. 3 as the basis of his further findings, and charged the defendant with a balance of ninety-three dollars and fifty-five cents, shown by exhibit A; this was not contested. Also, for an overcharge therein for commission and freight, $168.06, and the commission upon $1,940 of "insurance collected" $485; these items amounting to $746.61. Also, with $258 net, received by the plaintiff upon exhibit B after the same was rendered; also, for the machines unaccounted for in exhibit D, at the rate of thirty dollars per machine, less commissions amounting to $742.50, and for these items, with interest, the referee rendered judgment against the defendant. He refused to allow defendant anything for losses sustained by the breach of the agreement by the plaintiff in forwarding him unmerchantable machines. The defendant excepted to the various adverse findings and refusals to find.

*Matthew Hale*, for the appellant.

*Hamilton Harris*, for the respondent.

LANDON, J.:

The plaintiff sought to recover as for an alleged breach by the defendant of the written contract. Its own breach was proved instead, and the causes of action alleged were not sustained. The plaintiff, nevertheless, was permitted to recover upon other causes of action supposed to be disclosed by the evidence. The recent case of *Romeyn* v. *Sickles* (108 N. Y., 650) reaffirms the rule that the recovery must be within the case made by the pleadings, unless the parties consent to disregard them. This consent appears to have been given with respect to some of the items; with respect to the machines on hand hereafter considered it does not appear that the defendant had any notice that he was to meet such a claim until the referee had decided it against him. The defendant requested the referee to find that the plaintiff by furnishing and shipping machines upon defendant's order, which were not constructed in a good and workmanlike manner, and were not fit for the use for which they were intended, violated its contract with defendant. The referee refused so to find; this was error. The contract, construed with reference to the nature of the business,

implies a warranty on the part of the plaintiff that the machines should be reasonably fit for the purpose for which they were intended, and should be salable; otherwise, how could the defendant sell them; or, how could he realize anything from them, either. for the plaintiff or himself? The evidence shows that the machines, if made in a good and workmanlike manner and of proper materials, were reasonably fit for the purpose for which they were made, and were salable. Unless these machines should be of this character the whole business would be wrecked at the outset. Instead of having salable machines the defendant would have a mass of rubbish. In executory sales of merchandise there is an implied warranty that it will be merchantable. (*Hargous* v. *Stone*, 5 N. Y., 73; *Reed* v. *Randall*, 29 id., 358.) In executed sales a warranty is implied that the article is what its name imports (*White* v. *Miller*, 71 N. Y., 118.) If sold-by the manufacturer, that it is free from any latent defects growing out of the process of manufacture, and known to him, and that it is reasonably fit for the purpose for which it is intended, unless the purchaser relies upon his own judgment. (*Hoe* v. *Sanborn*, 21 N. Y., 552.) Here the defendant was the factor of the plaintiff for the express purpose of making sales of plaintiff's machines, and it was the essence of the contract that the machines should be salable.

The referee finds that some of them were not fit to sell or use, and were so far unsalable that, after they had been sold by the defendant, the vendees returned them because of their defects, and that the sales were lost. The defendant must, therefore, have lost commissions upon such sales. The referee, however, finds that the contract "appears to have been waived as to most of its material provisions." We do not think the defendant waived the breach of the contract respecting the merchantable quality of the machines. After the plaintiff had brought him into trouble by sending him imperfect machines, it asked him, in substance, to do the best he could under the circumstances, and this the defendant consented to do. Prices were reduced, and the defendant sought to make his own and the plaintiff's loss as little as possible, and agreed to account to the plaintiff for what he could realize out of the defective machines. He did not thereby waive his rights for the injury the

plaintiff's breach of contract had already caused him. He rendered a partial account in 1881, and full accounts on February 1, 1883. We infer that he was willing the account between him and the plaintiff should be closed upon the basis of the accounts thus rendered. These accounts were not challenged by the plaintiff until about the time of the commencement of this action, except with reference to commissions. No claim was stated in the accounts rendered for commissions upon rescinded or lost sales, but there were charges for commissions upon certain freights paid by defendant, and upon insurance collected.

The account rendered by the defendant is some evidence that he had no charge for commissions lost because of the defective machines; but it does not conclude him. Especially when any of its items are challenged by the plaintiff, it is opened for correction by the defendant. (*Young* v. *Hill*, 67 N. Y., 162.) The refusal of the referee to find that the plaintiff was guilty of any breach of his contract shows that he did not allow him for lost commissions because he did not consider that he ever had a valid claim to them. The referee charged the defendant with $742, being for thirty-three machines, at thirty dollars each, less commissions at twenty-five per cent. These are the machines reported by the defendant as on hand February 1, 1883. No such cause of action is alleged in the complaint. There is no evidence that the machines were salable, or were ever sold, or were worth thirty dollars each, or any other price. They are parcel of the machines that the defendant, after February 1, 1881, undertook to dispose of as best he could, and which, after reporting them on hand two years later, he does not appear to have done anything further with. If he was liable at all, it was for neglect of duty, and not for withholding their proceeds. Respecting the other items allowed, they seem to have been contested upon the trial as if embraced in the pleadings, and the findings of the referee are supported by the evidence.

The judgment should be reversed, a new trial granted, costs to abide the event.

LEARNED, P. J.; and INGALLS, J., concurred.

Judgment reversed, new trial granted, referee discharged, costs to abide event.