THE P. J. SORG COMPANY, Appellant, *v.* CHARLES E. CROUSE and DANIEL ACKERMAN, Respondents.

*Sales — implied warranty — reasonable time to inspect — excuse for delay in inspection — failure of consideration — partial rescission.*

Where a contract of sale is executory, and the article or merchandise is afterwards to be procured or to be manufactured by the vendor, there is an implied warranty that it shall be merchantable.

If it is not merchantable the vendee may rescind the contract and return the merchandise, after he has had a reasonable time within which to inspect it.

The question of what is a reasonable time is usually one for the jury upon all the circumstances, including the situation of the parties, the liability of injury to the vendor by delay and the convenience and necessities of the vendee.

When from the terms of the contract or the nature of the property the examination of it can only be made when the merchandise is used, and such is the mode of examination contemplated by the parties, the vendee is not in default until such test is made.

Where the consideration of a contract of sale fails the vendee is entitled to recover moneys paid upon the contract.

Where a vendee purchases merchandise under an agreement that he may return any part which proves unfit for use, he may rescind the contract and recover as to that part which proves to be unfit for use without rescinding as to the part which complies with the terms of the contract or returning it.

APPEAL by the plaintiff, The P. J. Sorg Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 24th day of November, 1893, upon the verdict of a jury rendered after a trial at the Onondaga Circuit; also from a judgment in favor of the defendants for costs, entered in said clerk's office on the 6th day of December, 1893, and also from an order entered in said clerk's office on the 21st day of December, 1893, denying the plaintiff's motion for a new trial made upon the minutes.

*Charles S. Kent,* for the appellant.

*Thomas Hogan,* for respondents.

MARTIN, J.:

This action was to recover the price of a shipment of tobacco made November 30, 1892, amounting to $178.32, and for an alleged balance of $7.97 due upon a shipment made August 17, 1892.

The principal controversy between the parties arose over the defendants' counterclaim of $108 for twenty-four caddies of tobacco received and paid for by them and returned to the plaintiff, for the reason that the tobacco was mouldy and unmerchantable. This amount, with three dollars and forty-seven cents discount upon one of the bills of tobacco by reason of its having been paid for within ten days, was allowed the defendants and deducted from the amount of the plaintiff's bills, leaving a balance due it which, with interest, amounted to the sum of seventy-seven dollars and forty cents, for which the jury rendered a verdict.

The evidence of the defendant Ackerman was to the effect that when the first arrangement was made between the plaintiff and the defendants, in pursuance of which the dealings between them commenced and under which all the tobacco received by the defendants was delivered, the representative of the plaintiff with whom such arrangement was made agreed with the defendants that the plaintiff would stand back of all the tobacco it sold the defendants, and if it was not satisfactory in every way, shape and manner, they could return it whenever they chose. The defendant Crouse's testimony as to this transaction was in substance that the plaintiff's representative said to them that at any time any tobacco was bad, no matter how long they had it, they might return it. Under this arrangement with the plaintiff the defendants purchased and paid for a large quantity of tobacco. The tobacco so purchased and paid for included the twenty-four caddies in question, which were purchased a year or a year and a half before they were returned to the plaintiff. After the defendants had discovered that one caddy of this tobacco was musty, and, consequently, valueless, they offered to return it to the plaintiff, who refused to accept it, although an agent of the plaintiff directed them to set it one side and charge it to the plaintiff. When afterwards it was discovered that the remaining twenty-three caddies were also defective, the defendants had a conversation with the manager of the plaintiff in regard to them, who directed the defendants to do nothing with them until he returned to the factory, and stated that everything would be arranged to the defendants' entire satisfaction. The plaintiff afterwards refused to allow the defendants for this tobacco or any portion of it. They thereupon shipped it to the plaintiff at its place of business, but it

refused to accept such tobacco, and it still remains in the warehouse of the carrier who transported it.

The proof tended to show that, without practically destroying the value of this tobacco, no inspection of it could be made, nor its condition ascertained until it was placed in the hands of the retail dealer and was opened for use. That the tobacco in question was mouldy and worthless was proved and practically undisputed. The defendants' proof was also to the effect that this kind of tobacco, when kept in a place like that in which the defendants kept this, would suffer no injury for five to ten years, and that it was the custom of the trade not to inspect such tobacco until it was opened for use.

Upon this evidence the court submitted to the jury the question whether the tobacco was unmerchantable when sold, whether the defendants could have properly inspected it when received by them, or before the time when its unmerchantable condition was discovered, and charged the jury that if it was examined in a proper way within a reasonable time to ascertain its condition, and it was unmerchantable when received by the defendants, they had a right to return the tobacco and receive credit for its value. Upon all these questions the jury found for the defendants.

The court held and submitted the case to the jury upon the theory that, as this tobacco was manufactured by the plaintiff and purchased by the defendants in the regular course of trade, there was an implied warranty that it was merchantable. The rule seems to be well settled that where a contract is executory, and the article or merchandise is afterward to be procured or manufactured, the contract carries with it an obligation that the article shall be merchantable, and, if it is not, the vendee may rescind the contract and return it after he has had a reasonable time to inspect it. (*Gallagher* v. *Waring*, 9 Wend. 20; *Hargous* v. *Stone*, 5 N. Y. 86; *Wood Mower & Reaper Co.* v. *Thayer*, 50 Hun, 516, 521; 2 Benjamin on Sales, 865, § 989; *Hoe* v. *Sanborn*, 21 N. Y. 555, 562; *Howard* v. *Hoey*, 23 Wend. 350; *Cleu* v. *McPherson*, 14 N. Y. Super. Ct. [1 Bosw.] 480; *Peck* v. *Armstrong*, 38 Barb. 215; *Newbery* v. *Wall*, 35 N. Y. Super. Ct. [3 J. & S.] 106.)

The appellant, however, contends that the defendants did not inspect this tobacco within a reasonable time, and, therefore, it was

accepted by them, and they could not sustain the counterclaim in this action. It is clearly the duty of a purchaser to act promptly in examining goods sent upon his order and thus determine whether they comply with it. He must also give prompt notice to the vendor of their rejection, if defective, or he cannot avail himself of his right to return them. The vendee has, however, a reasonable time in which to make such an examination, and what is a reasonable time is generally a question of fact to be determined by a jury upon all the circumstances, including the situation and liability of injury to the vendor by delay, and the convenience and necessities of the vendee. (*Pierson* v. *Crooks*, 115 N. Y. 539.) But when, from the terms of the contract or the nature of the property, the examination can be made only when it is used, and such was, therefore, the mode of examination contemplated, the vendee is not foreclosed until the test is made. (*Gurney* v. *Atlan. & G. W. Ry. Co.*, 58 N. Y. 358, 364.) Applying these rules to the facts in this case, we are of the opinion that the question whether the defendants examined this tobacco within a reasonable time was a question of fact for the jury, and that its finding upon that question must be regarded as conclusive, especially in view of the fact that it was agreed between the parties that the defendants might return any portion of the property that was not satisfactory whenever they chose, or at any time, no matter how long after they received it, if it was bad. This agreement shows quite clearly that the plaintiff understood and recognized the fact that this kind of tobacco could not be inspected until it was sold to the retailer for use, and that that rule was to be applied in this case.

The plaintiff's claim that the defendants could not recover for the tobacco thus returned after they had paid for it, cannot, we think, be sustained. The payments were to be made in ten or sixty days. If made in the former time, it was doubtless before the property reached the defendants, or they had any opportunity whatever to inspect it. It was thus paid to save the two per cent discount. Having the right under their agreement to return any portion of the tobacco purchased by them when found to be bad, it is quite manifest, we think, that upon such return they had the right to recover the money they had paid for the property returned, or have credit for it upon their account with the plaintiff. As was said in

*Pierson* v. *Crooks* (*supra*, 554), the consideration upon which they paid the money failed and they were entitled to recover it back.

Nor do we think the plaintiff's claim, that the defendants could not rescind their contract for the purchase of the tobacco in question, without also rescinding it as to the other tobacco which was purchased at the same time and returning that as well, can be sustained. (*McKnight* v. *Devlin*, 52 N. Y. 399.) By the express terms of the contract between the parties, it was agreed that they might return any of the tobacco that was bad, no matter how long they had had it.

Moreover, it may be said that if the evidence was not sufficient to justify the jury in finding that the tobacco in question was in the same condition when delivered by the plaintiff as when returned by the defendants, yet, under the contract by which the plaintiff agreed that the defendants might at any time return any tobacco that was bad, no matter how long they had had it, the defendants had the right to return the tobacco in question and to receive credit for its amount.

Having carefully examined all the evidence given upon the trial, the judge's charge and the exceptions and rulings by the trial court, we are of the opinion that there are no exceptions which would justify a reversal of the judgment; that the verdict is sustained by the evidence, and that the judgments should be affirmed.

HARDIN, P. J., and MERWIN, J., concurred.

Judgments and order affirmed, with costs.