## S. WELSH *vs.* CARTER.

THIS was an action of assumpsit on a promissory note. Plea, the general issue, with a notice attached, that on the trial of the cause the defendant would prove, that the note declared on belonged to John Welsh, and that the suit was prosecuted for his benefit ; that the consideration of the note was a quantity of *barilla*, purchased by the defendant of John Welsh, which was warranted to be Alicant barilla of the first quality, when, in fact, it was not Alicant barilla of the first quality, nor was it barilla, but some fraudulent preparation, made for the purposes of fraud and deceit, and of no value whatsoever ; and that, consequently, the note was void. The cause was tried at the New-York circuit, in March, 1826, before the Hon. William A. Duer, one of the circuit judges.

The making and endorsement of the note was admitted, and it was proved, by an answer of the plaintiff and John Welsh, to a bill of discovery, that the note was given on the

To maintain an action for selling one article of merchandize for another, there must be either warranty or fraud. The circumstances that the article sold is entirely spurious and worthless, fraudulently made for the express purpose of being sold for a valuable commodity, which it was made to resemble, does not vary the rules of law, as between innocent vendors and vendees.

The principle of the rule of *caveat emptor* is, that the vendee has it in his power to guard against any latent defect or deception in the article purchased, by exacting a warranty from the vendor, and applies as well to a case where the article was originally a fraudulent one, as to any other, if the vendor is not affected with the fraud. The fact of the vendor having a remedy over against his factor abroad, or against the sellers of the article, does not affect the rights of subsequent parties, where there is no warranty or fraud. The declarations or representations of an agent, relative to the same article of merchandize, in the sale of which there is alleged to have been fraud, to other persons to whom he offered parcels of it for sale subsequent to the sale in question, are admissible in evidence.

UTICA,
Aug. 1828.

Welsh
v.
Carter.

purchase of a quantity of barilla, that it had been endorsed to the plaintiff without any consideration for his accommodation, to enable him to obtain a discount of the same, and if the note was not recovered, the loss would fall upon John Welsh. It appeared that D. W. Fitch was employed by John Welsh, who resides in Philadelphia, to sell a quantity of barilla in the city of New-York, which Welsh had imported. The defendant procured a sample, had it analyzed by a chemist, made an offer for and purchased a quantity of the article, and gave his note for $850, the amount of his purchase at the rate of $52,50 per ton, payable in six months. The agent testified that he stated to the defendant that he was entirely unacquainted with the value of barilla, that the defendant must judge for himself what price he could give, that he did not warrant the article, or make any false or fraudulent representation in relation to the same. Doct. Griscom testified that he had analyzed a portion of the article, that from its appearance he judged it to be of an inferior quality, and on analysis, discovered that it was made up of common salt and carbon, and was worth nothing for the purpose for which it was purchased, that he considered it an imposition, that it contained about one half per cent. of alkali, and was not worth one cent per cart-load. The chemist, who had first analyzed the article for the defendant, testified that he had made a mistake, and on a revision, agreed with Dr. Griscom that it was of no value. The defendant offered to prove declarations and representations made by Fitch to sundry persons, subsequent to the sale to the defendant, relative to the value and quality of the portion of the article which remained on hand ; which evidence was objected to by the plaintiff, but admitted by the judge, and the plaintiff excepted. A correspondence also was shewn between John Welsh and a merchant in Boston, relative to the article, for the purpose of proving fraud, which it is unnecessary to detail. His honor, the judge, submitted the questions of warranty and fraud to the jury, and charged them, that if they believed the article to be a fraudulent article, although they should find that there was no fraud in the vendor, the policy of the l aw cast the loss upon him, as the importer of the article ; to

which charge the plaintiff excepted. The jury found for the defendant, and the cause now comes before this court on a bill of exceptions.

*J. Coit*, for plaintiff. Although an article is originally manufactured for the purposes of fraud, a *bona fide* holder is not responsible for the fraud, unless knowledge is brought home to him. On the trial, a case from 1 *Salkeld*, 289, was cited to support a contrary position, which was adopted by the judge. On examination, it will be found that case does not support the charge given to the jury. All that is decided by it is, that a principal is responsible for the misrepresentations of his agent. (3 *Atkyns*, 47.)

The vendee here not only had an opportunity to examine the commodity, but availed himself of it, and analyzed the article by chemical tests. The vendor, therefore, is not liable for a latent defect, and unless fraud or warranty was shewn, he was entitled to a verdict. (20 *Johns. R.* 196. 4 *Cowen*, 440. 3 *Campb. N. P.* 153. 4 *id.* 144, 169. 2 *East*, 320.)

*Anthon*, for defendant. The article delivered was totally different from that undertaken to be sold, and in this respect is distinguishable from the cases in 20 *Johnson* and 4 *Cowen*. In those cases the article proved to be of an inferior quality; here it is shewn to be entirely worthless—a fabrication for fraudulent purposes. Suppose a man should purchase 100 chests of tea, and the article delivered should be found to be saw-dust; or a bale of cotton, and it should turn out to be a log of wood surrounded by cotton, would the purchaser be liable to pay? To render the contract obligatory, the thing sold must have an actual or potential existence. If a horse not present is sold, and it appears he was dead at the time; or a house at a distance, and it is consumed by fire, the purchaser is not liable. (2 *Kent's Comm.* 367. *Pothier on Obl.* 12.) A case was tried in the mayor's court of N. Y. some time since, when *Clinton* presided, in which a contract was sought to be enforced on the sale of a quantity of indigo. It was proved to be clay painted, and

UTICA,
Aug. 1828.

Welsh
v.
Carter.

the action was adjudged not to lie. The counsel also cited, as analogous cases, 11 *East*, 300, 1 *Maule & Selwyn*, 593, and *Chitty on Contracts*, 230.

The case of *Horn* and *Nichols*, (1 *Salk.* 289,) is directly in point. It was there holden, that if a merchant sell one kind of silk for another, whereby the purchaser is imposed upon in the value, he may bring his action ; and though it appear in evidence that there was no actual deceit in the merchant, but that it was in the factor beyond sea, yet it will be sufficient to charge the defendant ; for it was said, he shall be answerable for the deceit of his factor *civiliter*, though not *criminaliter* ; for since somebody must be a loser, it is more reasonable that he that puts the trust and confidence in the deceiver should be the loser, than the stranger. This principle is adopted, and the case in Salkeld recognized as sound law in all the elementary writers. (*Bull. N. P.* 31. *Esp. N. P.* 629. *Long on Sales*, 235. *Livermore*, 39. *Paley's Agency*, 230. *Ross' Vendors*, 128 ; *and see* 1 *Moore's R.* 108.)

The declarations and representations made by Fitch during the continuance of his agency, to other persons, relative to the pretended barilla, subsequent to the sale to the defendant, were properly received in evidence as facts to be taken into consideration by the jury, in passing upon the question of fraud. (4 *Starkie's Ev.* 60. 6 *Cowen*, 90. 3 *Johns. R.* 235. 2 *Campb.* 555.)

*D. B. Ogden*, in reply. Where a purchaser views an article of traffic for himself, and there is no fraudulent concealment, the rule of *caveat emptor* applies. The answer to the bill of discovery having been read by the defendant, the whole is in evidence. From that it appears that the article was bought and sold as a fair article ; that the defendant had a sample, and there is no complaint that it turned out to be different from the sample. He had it analyzed, offered a price, and made the purchase. Under these circumstances, let there have been what fraud there may in the compounding of the article, the vendor is not answerable for it. If the charge of the judge is correct, that the law casts the loss upon the

vendor, where the article is fraudulent or counterfeit, though he be innocent of the fraud, the rule of *caveat emptor* is a nullity. The case in *Salkeld* does not support the charge. There the sale was not by the principal, but by the factor abroad; and it was holden, that when a factor perpetrates a fraud, the principal is responsible, and so the case in Salkeld is reported in 3 *Atkyns*, 43.

UTICA,
Aug. 1828.

Welsh
v.
Carter.

*By the Court*, SUTHERLAND, J. The judge charged the jury, " that if they believed the article (sold by the plaintiff to the defendant) to be a fraudulent article, although they should find that there was no fraud in the vendor, yet the policy of the law cast the loss upon him as the importer of the article." In *Jewitt* v. *Colgate & others*, (20 *Johns. R.* 196,) the article sold, as in this case, was sold as *barilla*, but it proved to be not barilla, but *kelp*, an entirely different article, not used in this country, of little value for any purpose, and of none whatever for the purpose for which *barilla* is used—the manufacture of soap. It was contended in that case, that the commodity, having been advertised and sold as and for *barilla*, and so described in the bill of parcels accompanying the delivery of it to the defendants, it amounted to an undertaking or warranty, on the part of the vendor, that it was *barilla*. That a warranty is always implied that the article is that for which it is sold; but the court held that no such distinction was to be found in the cases; that the common law rule, *caveat emptor*, applied to the case, and that where there is no fraud or agreement to the contrary, if the article turns out not to be that which was supposed, the purchaser sustains the loss. The same doctrine had been previously held in this court, in *Seixas* v. *Wood*, (2 *Caines*, 48.) The action there was for selling *peachum* for *brazilletto wood*, and as there was neither warranty nor fraud, the vendee was held to have purchased at his peril. All the authorities are considered and analyzed in these cases, and the doctrine is conclusively established, that to maintain an action *for selling one article for another, there must be either warranty or fraud*. The rule of the civil law is admitted to be different. Can the circumstances, then,

UTICA,
Aug. 1828.

Welsh
v.
Carter.

that the article sold is an entirely spurious and worthless one, fraudulently made for the express purpose of *being* sold for a valuable commodity which it was made to resemble, vary the rules of law as between innocent vendors and vendees? The principle of the rule of *caveat emptor* is this, that the vendee has it in his power to guard against any *latent* defect or deception in the article purchased, by exacting a warranty from the vendor ; but if, instead of taking this precaution, he will trust to his own sagacity and judgment, he should bear the loss if they deceived him. The principle assumes that both parties are equally innocent, and it throws the loss upon him who omits to exact that which would have afforded him ample protection, the exacting of which would have apprised the opposite party of the necessity of taking measures for his own indemnity. The principle does not look beyond the immediate parties to the transaction, and why it is not as applicable to a case where the article was originally a fraudulent one, (as the judge expresses it in his charge,) as to any other, if the vendor was not affected with the fraud. It is said the policy of the law in such cases casts the loss upon the importer or vendor, because he has his remedy over against his factor beyond sea ; whereas the defendant has no remedy, if the loss is thrown on him. Suppose, in an ordinary case, it should appear that the vendor who sold an article without warranty, purchased it with warranty, would that circumstance change the rule of law as between him and his vendee, and render him liable to respond ; not because he had been guilty of fraud, or had agreed to be answerable under such circumstances, but because, if he was made responsible, he would be able to receive back whatever he was compelled to pay? The law does not proceed upon such principles. It does not determine the rights of A. against B., by inquiring into those of B. against C. I am not aware of any consideration of public policy, which should induce the adoption of such a rule. The declarations or representations of Fitch, in relation to this same lot of barilla, to other persons to whom he offered parcels of it for sale, subsequent to the sale to the defendant, I am inclined to think were properly admitted. Fitch was the agent for the plaintiff, for the pur-

pose of selling the whole lot of *barilla*, and his agency continued until that was accomplished or his power was withdrawn. His subsequent representations might, in connection with other circumstances, (in the absence of any direct proof as to what his contract with the defendant was,) be entitled to some weight, though under the circumstances of this case, where we have the direct and positive testimony of Fitch upon the subject, I think they should have had but little influence with the jury. They were, however, admissible, and the exception upon that point was not well taken. On the first point, however, we are of opinion that the learned judge erred. A new trial must, therefore, be granted.