By the Court,

Cowen, J
It is conceded by the counsel for the defendant in error that there was no express warranty, but he insists that there was an implied warranty that the flour was merchantable. He is doubtless right in another point which he makes, that there was an implied warranty of wholesomeness, especially if the jury might say, on the evidence, that the flour was intended for domestic use. But the judge did not put the case to them in that view.
There may be some doubt, as contended by the counsel for the plaintiffs in error, whether the charge can be considered as having [269] put the case on the ground that the warranty was of a merchantable quality; but admitting this to be so, I am not aware that a general sale of merchandise implies a warranty of any quality. Many cases on this point are collected by Chancellor Kent in his commentaries (2d vol. 478. 9, and note c. and 481, note c. 3d ed.) Some of the English cases cited by him in the first note, he thinks, if carried out in principle, would go far towards the adoption of the civil law rule, that a sound price implies a warranty; and several American cases, including that of Gallagher v. Waring (9 Wend. 20), are looked upon by him as showing a disposition to domesticate the *154 rule with us. On the whole, however, he considers the contrary as well established both in the English and American law. I think we may say this is emphatically so in New York. A mistaken sale of Peachum wood, for Brazilletto (Seixas v. Woods, 2 Caines, 48); or Barilla for Kelp (Swett v. Colg te, 20 Johns. R. 196), though the article intended be mentioned in the bill of parcels, does not subject the vendor to an action. So a sale of a composition, fraudulently made to resemble Barilla, as and for the latter (Welsh v. Carter, 1 Wendell, 185). In these cases, there was a mistake in kind, and the substituted article was either greatly inferior or utterly worthless. In the two latter cases, the subjects of sale were manufactured articles (20 Johns. R. 196). And the cases are, therefore directly the contrary of what is supposed to have been decided in Laing v. Fidgeon (6 Taunt. 108), that a warranty of merchantable quality is always implied against the vendor of manufactured goods, Best, O. J. in Jones v. Bright (5 Bing. 533); though I am unable to perceive that the case holds any such thing. In Welsh v. Carter, the simulated Barilla was literally worth nothing (Conner v. Henderson, 15 Mass. R. 319), is to the same eifect with Seixas v. Woods.
Upon the point of mere quality, our cases are equally uniform, and more strongly supported by other authorities, both in England and the United States. There is no implied warranty in a general sale that the quality shall be equal to the price paid (Snell v. Moses, 1 Johns. R. 96, 105), and [270] admitted in Defreeze v. Trumper (1 Johns. R. 275, and Sands v. Crump, 5 Johns. R. 395, 404). The principle was applied to a sale of Spanish brown and white lead in kegs for a fair price, which proved to be worthless by previous adulteration (Holden v. Dakin, 4 Johns. R. 421); to the sale of a wagon purchased on sight, for $50, affirmed by the vendor to be worth that sum, whereas in truth it was worth but 25 dollars (Davis v. Meeker, 5 Johns. R. 354); to stock in a turnpike company sold as being fully paid up, but on which the vendor was largely in arrear, both partiej mistaking the eifect of an entry in the company’s books, which credited pay meht in full (Cunningham v. Spier, 13 Johns. R. 392, 395); the sale of ? slave for a sound price, who was in the habit of stealing (Fleming v. Slocum, 18 Johns. R. 403); and of crockery for the price of first quality, whereas this, article turned out to be inferior (Thompson v. Ashton, 14 Johns. R. 316). Several of these cases, it will again be perceived are of manufactured articles; and in Thompson v. Ashton, this court refused to receive evidence that it was customary to sell crockery in close crates, without inspection, and on exhibition of the. invoice, with the understanding that such sales carried a warranty of the article being good and merchantable. The sale was in fact by invoice and on an assertion that the crockery conformed to it, and so far resemble Seixas v. Woods.
These cases have not been overruled, and their principles have not been seriously questioned anywhere. It has been doubted whether those which deny a warranty to be implied by description in a sale note, bill of parcels, &e., were not a wrong application of the common law rule (2 Kent’s Comm. 479, 3d ed,.); and they have been severely criticised and generally repudiated in our sister states, whose courts hold, with the English cases, that such a description is a warranty of kind and quality, as far as it goes (Yates v. Pym, 6 Taunt. 446; 2 Marsh, 141, S. C; Shepherd v. Kain, 5 Barn. & Ald. 240; Gardiner v. Grey, 4 Campb. 144, as explained 2 Pick, 219, 220; Bridge v. Wain, 1 Stark. R. 504; Rowe v. Oborne, 1 id. 140; Prosser v. Hooper, [271] 1 Moore, 106; Osgood v. Lewis, 2 Harr. & Gill, 495, 522 to 527; Hastings v. Lovering, 2 Pick. 214, 220; Borrekins v. Bevan, 3 Serg. & Rawle, 23; contra, see Jendwine v. Slade, 2 Esp. R. 572; Conner v. Henderson, 15 Mass. R. 319, and see Henderson v. Sevey, 2 Greenl. 139).
These cases may be easily extended in principle to everything said or *155 written, in respect to kind or quality, though intended as mere matter of description or opinion. In Vermont, it was insisted on as implying a warranty in a note for good stoves. These were found to crack, on trial a long time after they had been delivered; but the court refused to consider the word good as implying a warranty. Skinner, C. J., said he was inclined at first to consider it a warranty of ordinary quality; but the court was satisfied that such a construction would be attended with much difficulty in its application. A merchant, said he, affirms his articles of sale to be good; this is understood to be mere opinion. • Yet in Borrekins v. Bevan (3 Serg, & Rawle, 37), Rogers, J., says, “ From a critical examination of all the cases, it may be safely ruled that a sample, or description in a sale note, advertisement, bill of parcels or invoice, is equivalent to an express warranty that the goods are what they are described, or represented to be, by the vendor.” And he strongly intimates that we have virtually overruled Seixas v. Woods in our cases, raising a warranty on a sale by sample (See Oneida Manuf. Society v. Lawrence, 4 Cowen, 440; Andrews v. Kneeland, 6 id. 354; Boorman v. Jenkins, 12 Wendell, 565; Beebee v. Robert, id. 413; See also 5 Johns. R. 395; 1 Pet. C. C. R. 317; 8 Pick. 250; 1 Campb. 113; 4 Barn. & Ald. 387). He then proceeds to show that the English cases always imply a warranty that the goods sold are the same in specie with those mentioned in the contract. The illustrations which follow, show how difficult it is to limit this exception in its application to the concerns of real life; and how easily it may be confounded with a mere defect in quality. All these cases are not an extention of the doctrine of implied warranty, so [272] much as of what shall be considered evidence of an express engagement.
Either class of the New-York cases, those which relate to kind or quality, in their principle dispose of the one at bar. They are but illustrations of the rule nearly universal, that a warranty is not raised by a sound price •alone. There are certainly exceptions, but they all depend on peculiar circumstances. One is the sale of provisions to be used as food for mankind. This rests on a regard to the public health, Van Bracklin v. Fonda (12 Johns. R. 468); and I am not aware of any other case in this state wherein a warranty of quality is engrafted on a sound price alone. 1 have already noticed that the present case is not within that exception.
It is said that a much more comprehensive exception is to be found in the modern English cases. These are supposed to hold that a stipulation for the merchantable quality of the article sold is always implied, especially in the sale of manufactured articles. Such an import is imputed in 2 Kent’s Comm. 479, 80, note c.; and it can not be denied that Gardiner v. Gray (4 Campb. 144), cited in Kent’s Comm., goes that and even greater lengths, unless indeed it be put on the restricted ground of description in a written contract, as the marginal note seems to place it. There is nothing in the case itself so to confine it. The counsel for the defendant in error, I think, has with great propriety drawn our attention to this case. If I understand it Lord Ellenborough means to assert, that without any particular warranty, there is an implied term in every contract, that the article shall be saleable at a reasonable price under the denomination mentioned in the contract. . The case was simply a sale of waste silk. It was inferior in quality, and not saleable under that denomination. Still it was waste silk. True it was sent from some distance; it was described in a sale note; it was a manufactured article; but no particular restricted ground is taken. The case, for aught I see, goes over to the civil law in respect to personal property, as effectually as Hitchcock v. Giddings (4 Price, 135), has done in respect to real property (see 1 Dom. 84). There may be a moral beauty in the [273] Roman law, which commends it to our adoption. There is no doubt that it is a more complete protection against the secret frauds of the vendor; *156 but it lies with the legislature to adopt it. Such a measure would, at best, unsettle invetei ate habits of business, and introduce a vast amount of litigation. Jones v. Bowden (4 Taunt. 847), was a case of fraud. The other cases cited by Chancellor Kent, and which are spoken of as raising generally a warranty that the article shall be fit for the purpose intended, seem to be limited to sales where the thing is understood by both parties to be purchased for a specific use. Laing v. Fidgeon (6 Taunt. 108), was the case of a sale, by sample, of goods for the North American market; and the goods neither corresponded with the sample, nor were they fit for the market. In Gray v. Cox (4, Barn. & Cress. 108), the court were divided on going even to the extent of saying that a sale of goods for specific object raised a warranty. Jones v. Bright (5 Bing. 525), was a sale of copper for sheathing a specific vessel. Best, C. J. expresses his desire to put the case on the broad principle, that “if a man sells an article, he thereby warrants that it is merchantable; that it is fit for some purpose.” This was established, he thinks, in Laing v. Fidgeon. The other judges do not go that length. But these are clearly not cases of implied but express warranty. If a man says Best, C. J. in Jones V. Bright,“ asks for a carriage horse, or a horse to carry a female, or a timid and infirm rider, he who knows the qualities of the animal and sells, undertakes, on every principle of honesty, that it is fit for the purpose indicated. The selling, upon a demand for a horse with particular qualities, is an affirmation that he possesses those qualities. So, it has been decided, if beer be sold to be consumed at Gibraltar, the sale is an affirmation that it is fit to go so far.”
It is not pretended that the case at bar is one of sale for a specific object. It was for a purpose altogether undefined, except by the nature of the article and its ordinary use; and I have therefore looked into the late English cases, merely to see how far they suslain the implied warranty of merchanta[274] blequality. They may be said to tend that way; but still if the words merchantable quality may restricted, as Chief Justice Best has put4 it, that the article must be fit for some purpose, it can not be considered a very serious departure from the old rule. If it be carried out to its ordinary-acceptation, I do not see but it would repeal the law, as it is to be collected from all the former cases. The case of Gallagher v. Waring (9 Wendell, 20), is relied on as going that length, and as fully justifying the charge in this case. The only point necessarily involved in that case was whether the well settled rule, that a sale by sample is a warranty, was applicable. Having concluded in the affirmative, the present chief justice proceeds incidentally to notice the question whether the cotton which lay in bales, not open for-inspection by the purchaser, was (the sample being out of question and the sale being general) impliedly warranted to be good merchantable cotton, free from damage, within the language of the second count of the declaration. He concludes that it was. Some of his illustrations are very strong, and, as Chancellor Kent thinks, indicate a decided leaning, like the British decision, to the civil law rule (2 Kent's Comm. 480, note, 3d ed). But it would be far out of the case, and indeed contradicting the scope of the opinion, to say that it goes beyond a sale where the article is not opened to the inspection of the vendee. In the case at bar, the barrels of Hour, for aught that appears, were-as easilyo pened as the kegs of Spanish brown or white lead in Holden v. Dakin, or the crockery crates in Thompson v. Ashton.
This doctrine, too, that an implied warranty arises from difficulty of inspection, seems to me to have been properly brought within vary narrow bounds by a recent and well considered case. Hyatt v. Boyle (5 Gill & John. 110). The sale was of 24 kegs of tobacco, branded with Parkins’s crooked brand, known to be a very fine one; but the tobacco proved to be rotten, and utterly unsaleable for ordinary use. The vendor knew it was intended for *157 sale; it was insisted, that the circumstances implied at least a warranty that the tobacco was merchantable, on the authority of the late English dicta, which it was said the court had approved in a previous case, in [275] which they had also sanctioned the same implication, from the buyer having no opportunity of ascertaining by inspection the quality of the article. The court deny having sanctioned the English dicta; and as to wanting opportunity for inspection, they remark, that the exception arising from the “ rule of caveat emptor from that cause does not apply to cases circumstanced like the present, but to those where the examination at the time of sale, is morally speaking, impracticable—as where goods are sold before their arrival or landing. The mere fact of the inspection being attended with inconvenience or labor, is not equivalent to its impracticability. If the purchaser desire to avoid it, and yet obtain the protection it would afford him he must do so .by exacting from the vendor an express warranty of quality. The case is applicable to the present in every view; and I confess that I am unable to see the reason for relaxing even thus far. Why not demand a warranty of the goods not yet arrived? Where is the exception to terminate? If we put ourselves upon difficulty. I know not what may eventually be brought within it. Every thing demanding peculiar skill, in order to ascertain its quality, comes, for aught I see, equally within the reason of the exception; and in respect,to some dealers, it is hardly possible to name any article of merchandise which will not, under circumstances though present and within view of the purchaser, come in for this implied warranty. Take the Maryland restriction to moral impracticability; and I ask, what is more impracticable than for the purchaser of a horse to discover certain diseases, or the purchaser of a ship its secret defects? It is many times absolutely impossible; yet we confine the vendee to an express warranty. By keeping within the pale of our own authorities, as in duty bound, we avoid at least a pilgrimage of litigation, if not a total subversion of the common law rule. It would be well for all courts perhaps to pause, and take a lesson from one of our neighbors, the state of South Carolina. Where, at an early period,’’says Richardson J., in Harrington v. The Com’rs of Highways of Newberry District (2 M’ Cord, 407), -“the judges decided that the purchaser of a negro, without warranty, might recover back the price paid, if the negro turned out [276] to be unsound, the decision was in favor of a valuable species of property, of the diseases of which, too, the seller could not he altogether ignorant in general, because the negro has understanding, and will tell of his complaint, &c. It was, too, of that property of which the common law does nut treat, and concerning which the civil law is very conversant. It seemed, then, somewhat allowable, to call in the aid of the civil law in the particular case (1 Bay, 319). In the very next case reported, id. 474, we "find the judges fearing, lest all contracts should be set afloat. But the new principle had got abroad; and although every new set of judges have deplored its growth, we find the principle deduced from the first decision, fairly applied to every species of property and every piece of mechanism, from a steam boat down to a yankee clock. Had the first judges been asked how far the innovation was to go, the reply would have been only to slaves. This species of property being unknown to the common law, we must look elsewhere for the rules concerning it as a matter of necessity; hut succeeding judges looked only to the plain principle established, that full consideration implies a warranty of soundness in everything; and now, under the influence of the principles thus extended, we find practically established in judicial proceedings, a species of eminent domain to make or break contracts.” After much litigation, that state seems finally, under a late decision of the court of appeals (Carnochen v. Gould 1 Bail. 179), to have been brought back to the common law. This case decided, that in a sale of cotton by sample, a close inspection of which *158 bjr a skillful dealer would have disclosed the defect in the bulk, the purchaser could not set up an implied warranty. The civil law rule, therefore, seems now confined in the United States to Louisiana. It prevailed for some time in Connecticut, but was recently overruled there (2 Kent's Comm. 480). It is said (4 Rand. 7), to prevail in North Carolina. Virginia adheres to the common law rule, even in respect to slaves (Wilson v. Shackleford, 4 Rand. 5).
A contract to deliver goods generally of a certain description, is another matter. There the contract is executory, and the vendee may take his ground on a defective article being tendered. He has doubtless a right to insist that it shall be merchantable; and if it prove not to be so, after he shall have taken reasonable time to inspect it, he may return it (2 Kent’s Comm. 479, 3d ed. Per Nelson, J., in Gallagher v. Waring (9 Wendell, 28). These authorities are cited by the counsel for the defendant in error; but it should be remembered that the case in question is one where the sale was executed. The rule is altogether different in the two eases, both as to real and personal estate. In neither can a specific execution be insisted on, even where there is a more mistake; but after the contract is once executed, the law will not, in general, raise an implied warranty of quality as to the latter, nor of title or quality as to the former.
On the whole, I am satisfied that the court below erred in the directions which it gave to the jury. The judgment must therefore be reversed, and a venire de novo must issue.
Judgment accordingly.*

 The judgment of the supreme court in this case was affirmed in the Court for the Correction of Errors, at its session in December, 1837, by a vote of 15 to 9,