Scott, J.
No issue seems to have been raised by the pleadings in this case, in regard to the terms and stipulations, whether express or implied, of the contract on which suit was *53 brought. The defendants, by not denying, admitted the contract to be as claimed by the plaintiffs; and any evidence on that subject was outside of the issue. If the boilers were proved, to the satisfaction of the jury, to be defective, as claimed by the plaintiffs, they would have been entitled to a verdict in their favor. But the plaintiffs themselves offered evidence in relation to the terms of the contract, without requiring an amendment of the answer, and asked to have the jury instructed as to its implied stipulations, and having thus, in fact, submitted an issue not presented by the pleadings, they would have no right to complain, if the law governing that subject was correctly given in charge to the jury.
We proceed, then, to the consideration of the question, whether the court below erred in refusing to give the instruction asked, and in the instructions actually given.
The general rule of the common law undoubtedly is, that upon an executed sale of specific goods, the vendor will not be held liable for any defects in the quality of the articles sold, in the absence of fraud, or express warranty. Where the purchaser is not deceived by any fraudulent representations, and demands no warranty, the law presumes that he depends on his own judgment, in the transaction, and applies the maxim “ caveat emptor.” But to this general rule the requirements of manifest justice have introduced sundry exceptions, of which some are as well settled as the rule itself, while as to others, the authorities can not be easily reconciled. We do'not propose an investigation of the subject further than is demanded by the case before us. The principal, if not the sole exceptions to the rule, are found in cases where it is evident that the purchaser did not rely on his own judgment of the quality of the article purchased; the circumstances showing that no examination was possible on his part, or the contract being such as to show that the obligation and responsibility of ascertaining and judging of the quality was thrawn upon the vendor, as where he agrees to furnish an article for a particular purpose or use. Thus, it is said by Mr. Story, “ when an examination of goods is, from their nature or situation at the time of the sale, impracticable, a war *54 ranty will be implied that they are merchantable. Thus, if goods be at sea, or not arrived; or if they fill the hold of a ship so that nothing but the surface can be seen; or if they be in bales, so that an examination of the center can not be made without tearing each bale to pieces; the seller will be understood to warrant them merchantable, and of the quality demanded and expected by the buyers.” Story on Contracts, sec. 834.
It is true that the warranty of merchantable quality has, in several cases, been held to be limited to cases where the examination is impracticable, and not merely inconvenient. Hyatt v. Boyle, 5 Gill & Johns. 110; Hart v. Wright, 17 Wend. 267. So also the implication of warranty is said not to extend to cases where an examination, though practicable, would be fruitless, on account of the latent character of the defects; but only to those cases in which there can be no examination. 1 Parsons on Contracts, 466. The same writer, however, says : “ One exception to the rule of caveat emptor springs from the rule itself. For a requirement that the purchaser should ‘ beware,’ or should take care to ascertain for himself the quality of the thing he buys, becomes utterly unreasonable, under circumstances which make such care impossible.”
The vendor’s liability on an implied warranty, in the case of articles sold for a particular purpose, is illustrated by the cases of Jones v. Bright, 5 Bingham, 533; Brown v. Edgington, 2 M. & G. 279; Beals v. Olmstead, 24 Vermont, 114; Brenton v. Davis, 8 Blackford, 317. Other cases have imposed proper limitations on this doctrine, as in the cases of Chanter v. Hopkins, 4 M. & W. 399, and Olivant v. Bayley, 5 Q. B. 288. In these cases it was held that where a “ known and ascertained article ” is ordered and furnished, though intended for a particular use, the liability of the maker and vendor extends only to defects in the materials and workmanship, and not to such as arise from the principle or mode of construction.
With respect to the doctrine that a sale made for a particular purpose, implies a warranty that the thing sold shall be fit *55 for that purpose, it is said in 1 Smith’s Leading Cases, 250, that “ the sounder view seems to be that no engagement of this sort 'can be implied against the vendor, save where the contract is partially or wholly executory; and that, in this case it is not in the nature of a warranty but of an implied stipulation, forming part of the substance of the contract.”
And a marked distinction will be found to pervade all the authorities, between an executed sale, where the property passes in presenti, and an executory contract for the delivery on a future day, of an article not specifically defined or selected at the time. In the latter case, it makes no difference whether the vendor have an article of the kind • on hand, or it is afterward to be procured or manufactured. In neither case can the promisee be compelled to rest satisfied with an inferior article. Though, in the absence of express stipulation, he can not insist that the article shall be of any special degree of fineness, yet he has a right to insist that it shall be of medium quality or goodness, free from such defects as would render it unmerchantable, or unfit for the purpose for which it is ordinarily used. Howard v. Hoey, 23 Wend. 351; Brown v. Sayles, 27 Vermont, 227; Story on Contracts, sec. 834; Broom’s Legal Maxims, 614. The doctrine is thus stated by the writer last referred to : “ Where an agreement is for a specific chattel -in its then state, there is no implied warranty of its fitness or merchantable quality; but if a person is employed to make a specific chattel, there the law implies a contract on his part, that it shall be fit for the purpose for which it is ordinarily used.” Broom’s Legal Maxims, 614.
It but remains to apply the principles of these authorities to the case under review. The contract sued upon was executory in its character. It was for the making and delivery to the plaintiffs, at a future day, of three steam boilers, to be used in running the engines of their rolling mill. It must be clear that the rule of caveat emptor can apply in no such case, whether the contract be made with a manufacturer, or other person; for the purchaser can exercise no judgment in regard to the quality of a thing not in esse, or which is indeter *56 mínate, and to be thereafter selected or procured by the exercise of the vendor’s sole judgment, discretion and will. Any rule must be unreasonable which would impute to a purchaser an intention to rely on his own judgment as to the quality of an article, where the circumstances of the case render it simply impossible for him to exercise any judgment whatever.
This is, perhaps, not the case of an article agreed to be furnished for a special purpose. It does not appear that the plaintiffs’ mills required boilers of a peculiar quality, and that this was known to the defendants. But they did know that the boilers were intended to be used for the purpose to which they are ordinarily applied; that is, to the generation of steam, to be used as a motive power; and they contracted to build them with reference to this their usual purpose and use. Whether they were large enough to generate sufficient power for the use of the plaintiffs’ mills, at Ironton, was a question upon which the plaintiffs might judge for themselves. They did so, and specified the dimensions ; and for any defect in their judgment the defendants are not liable. But the selection and procuring of the materials, and the manufacture of the boilers, the defendants took upon themselves, and over their action in these matters, the contract of the parties gave the plaintiffs no right of supervision, and no power of control. Under these circumstances, the defendants must be regarded as having agreed to procure such materials, and apply such workmanship as would furnish to the plaintiffs steam boilers free from all such defects, latent or otherwise, as would render them unfit for the ordinary uses contemplated by the contract.
The question is, then, not one of fraud, hut of the performance of the implied stipulations of a contract. It was well known by the defendants, at the time of making the contract, that the plaintiffs desired to procure steam boilers, fit, both in material and workmanship, for the use to which such boilers are ordinarily applied. They agreed to supply the plaintiffs demand in this behalf; and the question is, have they performed their contract? If they have failed, through defect of material procured hy themselves, or of workmanship, their *57 contract is broken, whether such defects be latent or visible, and however honest their intentions may have been.
It has been suggested that the law has been recently held otherwise, by the court of appeals, in New York, in the case of Hoe v. Sanborn, 8 Am. Law Reg. 740—754. But a reference to that case will show, that whatever the terms of the contract before the court may have been, it had been pleaded as an executed sale, not as an executory contract. Under the pleadings, therefore, that case was properly regarded by the court as raising only a question as to the extent of the manufacturer’s implied warranty, in the case of an executed sale of specific goods. Indeed, the court fully recognized the distinction between the case then before them, and the case of executory contracts, and said, what is evidently true, that the rule of caveat emptor was wholly inapplicable to the latter class. of cases. This authority, therefore, confirms, instead of conflicting with, the conclusion we have arrived at in this case.
To a majority of the court it seems clear, that the instruction asked by the plaintiff in the court below should have been given, and that the court erred in the limitation and exception specified in the charge given.
The judgment is therefore reversed, and the case remanded.
Brinkerhoff, C.J., and Sutliff, J., concurred.