Drew *v.* Roe.

———◆◆◆———

## WHEELER DREW *vs.* HARVEY ROE.

If a purchaser buys an article without a warranty, and is not entrapped by artifice or misled by misrepresentations, and the quality proves inferior to what he expected, he has no remedy against the seller.

Where an article thus purchased proved worthless, the defect at the time being

latent and unknown to both parties, but it had, at the time of the sale, a mer-
chantable quality and a value in the market, it was held that there was not an
entire failure of consideration.

ASSUMPSIT, to recover the price of a quantity of tobacco
sold ; brought to the Court of Common Pleas of Fairfield
County, and tried on the general issue, with notice, closed to
the court, before *Brewster, J.* The following facts were
found by the court.

On the last day of October, 1872, the defendant, who was
a tobacco dealer, of some years' experience in the culture,
purchase and sale of tobacco, and residing in Brookfield,
called at the house of the plaintiff in Newtown, about eight
miles distant from the residence and warehouse of the defend-
ant, to see him in regard to the purchase of a crop of to-
bacco belonging to the plaintiff. The plaintiff was absent,
but his wife informed him where he had gone. At the re-
quest of the defendant she then showed him all of the tobacco,
stored in some outbuildings, where it was hung for the pur-
pose of curing. The defendant then went in search of the
plaintiff, and on finding him, informed him that he had just
seen his tobacco. He then enquired of him what the quality
of the tobacco was, and the plaintiff replied that he was en-
tirely unacquainted with the tobacco business and knew
nothing about it, and that the defendant must judge for him-
self. The defendant then inquired his price for the tobacco,
and the plaintiff replied, " twenty cents a pound," which was
then the market price of merchantable tobacco. The de-
fendant then said, " I will go up and look it over again,
and if I conclude to take it I will leave word at your house."

The defendant on the same day returned to the plaintiff's
house, where he again looked over the tobacco, which was
so dry as to be somewhat difficult to handle, picked off some
leaves, tied them up as specimens of the quality of the crop,
and afterwards took them home with him. He then informed
the plaintiff's wife that he had agreed with the plaintiff to
leave word with her, if he would purchase the tobacco, and
requested her to tell the plaintiff that he would take it. She
inquired of him the price. He replied " twenty cents per

pound for the whole crop, to be delivered at my warehouse in Brookfield, as soon as my rooms are ready." She then inquired of him how the tobacco should be prepared, stating that the plaintiff had never before raised any. The defendant then took a board, and laid some leaves of tobacco across it, leaf with leaf, tip to tip and butt to butt, and informed her that that was the way to do it, and that they should put ten or twelve pounds in a bundle. The defendant then said that if he had time he would come down and show them further about it. Some time in December, 1872, after a part of the tobacco was stripped from the stalk and bundled and placed in the plaintiff's cellar, the defendant, with one Sidney Hawley, went to the plaintiff's house. They all went into the cellar, the plaintiff carrying a lamp, and passed their hands over and into the bundles of tobacco, which were lying on a bench. There was no other light in the cellar than that of the lamp, and objects could not be as plainly seen as by daylight.

One bundle was carried up stairs, and examined by the defendant and Hawley. Hawley remarked that there was some pole-rot in the tobacco, but the defendant thought not, and nothing was said on the subject to the plaintiff. The defendant then said to the plaintiff that the tobacco was all right, and that as soon as the weather would permit he wished he would strip and bundle the remainder, and that he would be ready to receive it.

In the latter part of December, 1872, when all of the plaintiff's tobacco was bundled and piled in his cellar, the defendant went to the plaintiff's house, and they both went into the cellar. The defendant then felt of the pile, and ran his hands into different parts of it. After this examination the defendant took off from the top of the pile two bundles of the tobacco, and the plaintiff one, which they carried up stairs. Two were opened and examined, and pronounced all right by the defendant. The plaintiff was about to open the other bundle with his knife, when the defendant said, "It's of no use looking any further; it's all right. Your cellar is a very dry cellar for keeping tobacco." The plaintiff again stated

to the defendant that he was entirely unacquainted with tobacco, and that the defendant must judge for himself.

On the 8th of January, 1873, the parties again met, on the defendant's premises, and the defendant said to the plaintiff, " Your tobacco is all right.   Bring it up."

On the 13th of January, 1873, the plaintiff carried all his tobacco to the defendant's warehouse, where it was to be delivered.   He noticed on loading it at his house that three bundles were damp on the outside, and accounted for it by their being at the end of the pile, and nearest the window of the cellar, but the defendant, after its delivery, conjectured that they had fallen off the pile upon the cellar bottom, and had become damp in consequence.

When the tobacco arrived at the defendant's warehouse, the defendant, his son, and a workman were there, and helped to receive it.   The son, the workman, and the plaintiff unloaded it into a box, which was successively filled and weighed by the defendant, and the tobacco after weighing was thrown by the workman therefrom to the defendant in the building, and, except as hereinafter mentioned, by the defendant placed in a pile in one heap on a platform, such as is ordinarily used in the storage of tobacco, and while so storing it the defendant laid aside six bundles which from their weight he supposed to be wet.   The weighing apparatus and the platform were erected by the defendant and his son, after the plaintiff's arrival at the warehouse.   The son, before they commenced unloading, had observed the tobacco, and told the plaintiff that there was pole-rot in it, and the plaintiff supposing that he referred to one of the three bundles which he had found to be damp, said, " Lay it one side and we will examine it."   The bundle was accordingly laid one side, and was weighed with the last box full of tobacco.

After the weighing and piling had been completed, the plaintiff and defendant each computed the several weighings, and agreed as to the quantity.   The defendant then inquired if that was all there was of his crop, and the plaintiff replied that it was.

The parties then passed from the room in which the to-

bacco was piled, to another room adjoining, called the sorting-room, and in so passing the defendant took up one of the seven bundles which he had laid aside, took it with him into the sorting-room, untied it, and examined it in the presence of his son and the plaintiff. The tobacco in that bundle was found to be in a bad condition; quite a number of the leaves were wet from tip to butt, and several were stem-rotten and frost-bitten; they were all streaky and black, and the inside of the bundle was rotten and as soggy as if wet with water. The defendant then went to the main pile and took a bundle from that, examined it and found it in the same condition as the one just previously examined. Four bundles were then taken by him from different parts of the pile, and examined in the presence of the plaintiff, and were all found in the same condition. He then told the plaintiff that the tobacco was not worth sorting over. The plaintiff replied that he did not know how it could be in that condition; that he knew nothing about tobacco. The defendant then said to him that he must know the difference between a wet leaf and a dry one, or a sound leaf and a rotten one, and then endeavored to find a sound leaf in the bundle last examined, but could find none, and then took up a leaf of the other tobacco which was lying there, and showed it to the plaintiff. The plaintiff said that he thought there was some other tobacco in the pile besides the wet and rotten tobacco, and went to the pile and brought a bundle of it into the sorting room, opened it and examined it, and said, " This is better." The defendant's son then stepped up and commenced throwing out wet, green and rotten leaves which were in it, and said, " This is no better than the other." The defendant thereupon said to the plaintiff, " I cannot and shall not accept of this tobacco under any circumstances whatever, and if you leave it here it will all rot and spoil." The plaintiff, who denied hearing this last remark of the defendant, then went out of the door without making any reply, and as he was leaving the premises, on the highway, the defendant again notified him that he would not accept the tobacco. The plaintiff replied that he had already received it. The defendant then asked the plaintiff what he

was going to do about the tobacco, to which the plaintiff replied that he did not know till he could see some tobacco men. The defendant then told him, if he wanted any one to see the condition of the tobacco, to select men experienced in it, for if he did not do it he should. The plaintiff then drove away, and neither sent any one to examine the tobacco nor afterwards himself made any examination of it. The defendant on the same day and on succeeding days caused the tobacco to be examined by several men experienced in the purchase and sale of tobacco.

The tobacco when so delivered was in fact worthless, having been spoiled by what is called the pole-rot, a disease contracted soon after the tobacco was hung on the poles, and in the month of September, 1872. The disease was caused by the tobacco being placed so closely together on the poles that it had not sufficient ventilation to prevent an excessive accumulation of moisture, the result either of sweating or wet weather.

There was on the part of the plaintiff no fraud proved or claimed. He had never before raised a crop of tobacco, and was ignorant of its culture and condition.

There was nothing in the external appearance of the tobacco while in the plaintiff's cellar, or in unloading it, with the exception of the seven bundles discovered in unloading, to indicate its unsoundness, but a careful and thorough examination of it at any time after the 1st of December, 1872, would have shown the defect occasioned by the pole-rot to an experienced dealer. Tobacco, however thoroughly wet or rotten, when exposed to the air will dry rapidly externally, and the colder and more windy the weather is, the more rapidly will the tobacco so dry, but the condition of the inside of the bundle will not be materially changed. The day the tobacco was delivered was cold and windy. The tobacco was properly covered during its conveyance to the warehouse. It was put in bundles generally averaging from ten to twelve pounds.

On the foregoing facts the plaintiff claimed, as a matter of law, that there was sufficient evidence to warrant the court

in finding an acceptance previous to and contemporaneous with the receipt of the goods, under the statute of frauds, if under the pleadings the statute of frauds could be set up in defense, which the plaintiff denied. And the defendant claimed, as matter of law, that there was an implied warranty by the plaintiff that the tobacco was merchantable; that there had not been a delivery of the tobacco and an acceptance thereof within the contemplation of the statute of frauds; that it did not appear that he had ever in any manner asserted, or intended to assert, any title to the tobacco, or claim any legal ownership thereof or right thereto, and that the weighing of the tobacco by him, and the receipt of it into his warehouse, were intended and understood by the parties to be for the purpose, first, of ascertaining the weight of the tobacco, and, second, as a place of deposit, until it could be examined, and its acceptance or refusal by the defendant determined. And the defendant further claimed, as matter of law, that he had the right to examine the tobacco after its delivery to him; and that, in consequence of the worthless condition of the tobacco, there had been a want as well as a total failure of consideration.

The court ruled adversely to these claims of the defendant, and found upon the foregoing facts an acceptance within the provisions of the statute of frauds, and rendered judgment for the plaintiff to recover the agreed price with interest.

The defendant moved for a new trial.

*White* and *Booth*, in support of the motion.

1. The contract for the sale of the tobacco was executory, and became complete only when " the buyer accepted part of the goods sold and actually received the same, or gave something in earnest." Rev. Statutes, tit. 25, sec. 2. In this case no money was paid or memorandum given. Until accepted the defendant had a reasonable time to examine the tobacco, ascertain its quality and condition, and determine whether to accept or reject it. *Percival* v. *Blake*, 2 Car. & P., 514; *Reed* v. *Randall*, 29 N. York, 358; *McCormick* v. *Sarson*, 45 id., 265; *Beck* v. *Sheldon*, 48 id., 365; *Treadwell* v. *Reynolds*,

39 Conn., 35 ; 3 Parsons on Cont., 44. The plaintiff conceded the right of the defendant to make the examination, as he proposed during the weighing to lay aside an apparently damaged bundle to be afterwards examined ; and, after the delivery, was present and assented to the examination by the defendant, and even himself examined a portion of it. The examination by the defendant previous to delivery determined nothing except its *then* condition—not its condition at the time of delivery ; of that he was to be the judge. He had bargained for *tobacco* ; he had paid the full market price, and, when delivered, he had a right to know what he had received.

2. Before the defendant can be held liable, or before the sale is complete, there must be both an acceptance and actual receipt by him. A mere receipt is not sufficient. There must be a delivery by the vendor with an intent to vest the right of possession in the vendee, and an actual acceptance by the latter with an intention to take possession as owner. *Phillips* v. *Bristolli*, 2 Barn. & Cress., 511 ; *Maberley* v. *Sheppard*, 10 Bing., 99 ; *Curtis* v. *Pugh*, 10 Adol. & El. N. S., 111 ; *Caulkins* v. *Hellman*, 47 N. York, 449 ; *Stone* v. *Browning*, 51 id., 211 ; Browne on Stat. of Frauds, § 326. Something more than mere words is necessary. There must be some *unequivocal* act on the part of the vendee, manifesting his intention to accept and appropriate the property. *Howe* v. *Palmer*, 3 Barn. & Ald., 321 ; *Shindler* v. *Houston*, 1 N. York, 266, 273 ; *Bailey* v. *Ogden*, 3 Johns., 399 ; Browne on Stat. of Frauds, § 326. And where any thing remains to be done to ascertain the price or quantity, no title passes. *McDonald* v. *Hewitt*, 15 Johns., 349 ; *Fitch* v. *Beach*, 15 Wend., 221 ; *Joyce* v. *Adams*, 8 N. York, 291 ; *Shepley* v. *Davis*, 5 Taunt., 617.

3. The statute of frauds need not be specially pleaded in bar of an action for goods sold. Under the plea of *nunquam indebitatus*, it is open to the defendant to object that the contract is void under the statute. *Fricker* v. *Thomlinson*, 1 Man. & Grang., 772 ; *Leaf* v. *Tuton*, 10 Mees. & Wels., 393. The general issue denies the material allegations in the dec-

laration. It is material for the plaintiff to prove a sale, delivery and acceptance; and the defendant may disprove either or all of these requisites without specially pleading the defense.

4. There was an implied warranty by the plaintiff at the time of the delivery of the tobacco that it was merchantable and of the quality demanded and fairly expected by the defendant. *Laing* v. *Fidgeon*, 6 Taunt., 109; *Jones* v. *Bright*, 5 Bing., 533. This is true of provisions and manufactured articles. This tobacco was put up, packed for market, though for a particular customer, and it was, to the extent of its preparation, a manufactured article. The defendant was a dealer in the article, which was bought by him to be resold, as the plaintiff knew. There was therefore an implied warranty that " it was fit for the purpose for which it was intended."

5. In this case there was an entire and total want of consideration. The article delivered was " worthless," having no value to the plaintiff, the defendant or any one else. The defendant did not get that which he bought. He bought *tobacco*; he received rotten leaves. Had he paid for them, perhaps he might not have recovered back the purchase money; (*Frazier* v. *Harvey*, 34 Conn., 469;) but if sued for the article, what principle of law or equity is violated if he successfully defends against the claim on the ground of the utter worthlessness of the article delivered to him?

*Taylor* and *J. A. Wilson*, contra.

PHELPS, J. The first question presented in the record, is whether the law implied a warranty of the good quality of the tobacco which the plaintiff claims to have sold and delivered to the defendant and for the price of which the present action was brought. The defendant was an experienced dealer in the article, and the plaintiff entirely unaccustomed to its culture and to the defects and unsoundness to which it is liable in the different stages of its being cured. No claim is made that there were any untrue representations, or improper concealment of its condition or quality, or any arti-

fice practised with respect to it. The defendant was told by the plaintiff that he must buy it on his own judgment after such examination as he chose to make, which he appears to have done; and neither fraud nor an express warranty are claimed.

To the general rule of the common law, that where an article is sold without fraud and without express warranty, and both parties have an equal opportunity to examine it, no warranty will be implied, there are very few exceptions, and none which can avail the defendant. The law leaves the parties to select their own terms of agreement, and if a vendee takes the risk of trusting to a contract without a warranty, and is not entrapped by artifice or defrauded by misrepresentations, and the quality of the article proves inferior to what he expected, he has no remedy against the vendor. *Dean* v. *Mason*, 4 Conn. R., 428; *Frazier* v. *Harvey*, 34 id., 469; *Hyatt* v. *Boyle*, 5 Gill & J., 110; *Moses* v. *Mead*, 1 Denio, 378; *Hart* v. *Wright*, 17 Wend., 267; *Winsor* v. *Lombard*, 18 Pick., 57.

The defendant also insists that he is entitled to set up by way of defense the entire failure and want of consideration for his promise to pay the plaintiff for the tobacco, on the ground that it proved to be of no value.

When the contract was made, the defect which was subsequently developed was latent and unknown to both parties, and in the absence of a warranty and fraud the defendant assumed the risk of its quality and condition. It then possessed, or by both parties was supposed to possess, a particular value in the market, and the defendant received precisely what he agreed to purchase and what the plaintiff intended to sell, namely, an apparently merchantable quality of tobacco, and therefore there cannot properly be said to have been a failure of consideration. Unless the defendant intended to take upon himself the risk of a deterioration in quality from the existence of secret defects he should have guarded against it by requiring a warranty, and the principle of indemnity for failure of consideration which he seeks to enforce is not applicable to the circumstances of this case. *Fortune* v. *Lingham*, 2 Camp., 416; *Mason* v. *Chappall*, 15 Gratt., 572; *Frazier* v. *Harvey*, supra.

The defendant attempts to raise another question, arising from the finding of the Court of Common Pleas of an acceptance by him of a part of the tobacco as within the provisions of the statute of frauds. It is unnecessary to determine whether under the pleadings that question could properly have arisen. If it could it was disposed of by the explicit finding of the court that there was an acceptance in fact.

A new trial is not advised.

In this opinion the other judges concurred.