*OIL WELL SUPPLY CO. v. CHARLES S. DAVIDSON.

VENDOR OF GOODS WITHOUT EXAMINATION, VENDEE DESCRIBING THEIR PURPOSE, HELD IMPLIEDLY TO WARRANT THEM FIT FOR DESCRIBED PURPOSE.

A firm dealing in oil well supplies which sells to a driller a cable for use in drilling a well, the latter explaining the purpose for which the cable is intended, and the dealer having none in stock of the proper kind, sending one to the purchaser from another place is held impliedly to warrant such cable to be fit for the purpose described and of merchantable quality, and if such cable prove defective the selling company should bear the loss and not the purchaser. The fact that the seller was without authority to warrant it, is immaterial in the absence of notice to the purchaser of such limitation of authority.

[For other cases in point, see 7 Cyc. Dig., "Principal and Agent," §§ 354-364; "Sales," §§ 305-317.—Ed.]

ERROR to Wood common pleas court.

I. C. Taber, for plaintiff in error.

Baldwin & Harrington, for defendant in error.

PARKER, J.

This action was originally brought by the Oil Well Supply Company in the court of common pleas of Wood county, to recover for a certain bill of goods that had been sold to one Charles S. Davidson, amounting to a little over $100.

Admitting the purchase of the goods and the fact that they had not been paid for, the defendant set up by way of setoff, the fact that some time before he had purchased of the supply company a drilling cable at a cost of something over $400, it being a cable of considerable length, fourteen or fifteen hundred feet, I believe; and he claimed that, at the time he commenced trading with the supply company, he was told by the manager of the store (the manager having made some inquiry as to his financial standing) and if he found anything wrong with any article he purchased, that the company would make it right.

He states that afterwards, when he went to purchase this cable, the manager said he had not in stock a cable he could stand by, or would stand by, but that he had one in another store, a branch store at Findlay. The defendant told him he would take it, and thereupon the manager had it sent to Davidson at a point where he was about to drill an oil well, and Davidson received it. He commenced in a day or two to use it in a well that he had already drilled something like a thousand

feet or more in, and as soon as he commenced to use the rope, it showed that it was of poor quality. It commenced to fray and break, and he had to cut it off at different times, and finally after using it but a short time he had to discard it and get another. It appeared to be rotten and certainly was of no practical use to the defendant, and of no value to him except as it was sold as old junk for a few dollars.

By way of reply to the answer of the defendant, the supply company claims that its agents have no authority whatever to warrant the worth or quality of goods; and it also denies that any such warranty was, in fact, made; that if made, the agent had no authority whatever to make it; that it was contrary to and against the direct and positive orders of the company.

The case went to trial and quite a volume of testimony was taken to show that the agents had no authority to make any warranty. Testimony was taken in Pittsburgh in the way of depositions of the officers of the supply company, and testimony of agents here in the field, showing that there were circulars and letters issued, and a form of contract for the purchase of goods was furnished the agents in which it was stated that the company would not warrant any of the goods that were sold, the same being sold upon a commission, and not manufactured by them. Testimony was offered on behalf of the plaintiff, and again on behalf of the defendant as to whether there was any general custom in the oil field for the supply stores to warrant the quality of goods, and if the goods failed to be of marketable quality to replace them, and upon that the testimony was quite conflicting.

At the time the agent sold the cable to the defendant, the form of contract that was required by the company was not used, nor was anything said at that time about the warranty of the goods. The only phrase that it is claimed was used by the agent who sold it, was that he had a cable he was willing to stand by, that it was a higher priced cable than some of the others, and the defendant said he would take that cable, and that cable was, in fact, sent him. At the time of the bargain it was not in the store and the purchaser did not see it, the purchase being made at Trombley, Wood county, and the cable referred to by the agent being in Findlay, Hancock county, whence it was sent directly to the defendant in the field where he was then at work.

On this state of facts the court charged the jury fairly and correctly upon the law of the case. The question in regard to the right of the agent to make a warranty turned upon the legal question whether in the usual course of trade and business, an agent of this kind, a general agent, would have the right to make a warranty, and upon that a proper charge was given to the jury.

Supply Co. v. Davidson.

Another question that was made, was as to whether there was an implied warranty as to the quality of the goods, that they should be of good merchantable quality and fairly and reasonably fit for use. One decision cited that we think has some bearing upon the case, is that of *Rodgers* v. *Niles,* 11 Ohio St. 48 [78 Am. Dec. 290]. In that case it seems there had been a sale of three boilers by Rodgers & Company to Niles & Company to be used in certain mills the latter were erecting, and it turned out in using the boilers that they were defective, owing to a defect in the material that went into them. A discussion,—it seems to have been a very able discussion,— which was participated in by some of the leading Cincinnati attorneys, was had as to whether there was an implied warranty by the manufacturers against these secret defects, it being contended on the one side that there was, and on the other side that the manufacturers were only bound to use reasonable care in the selection of the material which went into the boilers. The Supreme Court divided on the question, a majority of the court holding that there was an implied stipulation.

The decision was given by Judge Scott and I will read some from it, page 53:

"The general rule of common law undoubtedly is, that upon an executed sale of specific goods, the vendor will not be held liable for any defects in the quality of the articles sold, in the absence of fraud, or express warranty. Where the purchaser is not deceived by any fraudulent representations, and demands no warranty, the law presumes that he depends on his own judgment, in the transaction, and applies the maxim *'Caveat emptor.'* But to this general rule the requirements of manifest justice have introduced sundry exceptions, of which some are as well settled as the rule itself, while as to others, the authorities cannot be easily reconciled. We do not propose an investigation of the subject further than is demanded by the case before us. The principal, if not the sole exceptions to the rule, are found in cases where it is evident that the purchaser did not rely on his own judgment of the quality of the article purchased; the circumstances showing that no examination was possible on his part, or the contract being such as to show that the obligation and responsibility of ascertaining and judging of the quality was thrown upon the vendor, as where he agrees to furnish an article for a particular purpose or use. Thus, it is said by Mr. Story, 'when an examination of goods is, from their nature or situation at the time of the sale, impracticable, a warranty will be implied that they are merchantable. Thus, if goods be at sea, or not arrived; or if they fill the hold of a ship so that nothing but the surface can be seen;

Wood County.

or if they be in bales, so that an examination of the center cannot be made without tearing each bale to pieces; the seller will be understood to warrant them merchantable, and of the quality demanded and expected by the buyers.' Story, Contracts Sec. 834.

"It is true that the warranty of merchantable quality has, in several cases, been held to be limited to cases where the examination is impracticable, and not merely inconvenient. *Hyatt* v. *Boyle,* 5 Gill. & Johns. 110; *Hart* v. *Wright,* 17 Wend. 267. So also the implication of warranty is said not to extend to cases where an examination, though practicable, would be fruitless, on account of the latent character of the defects; but only to those cases in which there can be no examination. 1 Parsons, Contracts 466. The same writer, however, says: 'One exception to the rule of *caveat emptor* springs from the rule itself. For a requirement that the purchaser should 'beware' or should take care to ascertain for himself the quality of the thing he buys, becomes utterly unreasonable under circumstances which makes such care impossible.' "

Then he cites some cases upon the general rule, and says:

"With respect to the doctrine that a sale made for a particular purpose, implies a warranty that the thing sold shall be fit for the purpose, it is said in 1 Smith L. Cas. 250, that 'the sounder view seems to be, that no engagement of this sort can be implied against the vendor, save where the contract is partially or wholly executory; and that, in this case it is not in the nature of a warranty, but of an implied stipulation, forming part of the substance of the contract.' "

The jury returned a verdict in this case in favor of the defendant, Davidson, and we think the verdict should be sustained.

The large amount of testimony that was taken in regard to the notice to agents, which notice was never brought home to Davidson, must be disregarded.

The case stands upon the questions, first, whether there was an express warranty, and upon that the jury found in favor of the defendant, and, secondly, whether there was a sale of the article for a specified purpose, and an implied warranty that it was fit for that purpose. Passing the first question, upon which there is a conflict in the evidence, we hold that the vendor is liable upon the implied stipulation. The vendee did not see the cable and had no means of examining it.

He told the agent what he wanted, and the agent told him they had the article at the other store and they would send it to him, and we hold that under such circumstances the vendor was bound to send to him an article that was merchantable, and reasonably fit for the use intended.

Supply Co. v. Davidson.

It is very clear from the evidence, that for some reason this cable was of poor quality and really unfit for use—of no practical use—and we hold that the loss should fall upon the vendor. The judgment of the court of common pleas will, therefore, be affirmed. but without penalty.

**Hull** and **Haynes, JJ.,** concur.